RICHARD F. ABBOTT *v.* ROSWELL R. KEITH, Admr. of
SAMPSON GALE.

WASHINGTON,
July,
1839.

In appeals from the decision of commissioners upon insolvent estates, the plaintiff may join, in one declaration, counts in assumpsit and in book account.

If a feme sole administratrix, refer any matter concerning the estate to arbitration, and appoint an attorney to attend before the arbitrator, and then intermarry before the award, the power of the arbitrator is thereby determined.

Where there are mutual current accounts between parties, each new item of credit or payment takes the whole account out of the statute of limitations, unless, perhaps, where more than six years has intervened between two consecutive items in the antecedent account.

THIS was an appeal from the decision of commissioners appointed, by the probate court, to receive, examine and adjust all claims against the estate of Sampson Gale, deceased, and those exhibited in offset thereto.

The plaintiff in his declaration, joined counts in assumpsit and on book account.

The defendant moved the county court to dismiss the appeal, insisting that assumpsit and book account could not be joined. And, also, demurred to the declaration for the same cause. The county court overruled the motion, and decided that the declaration was sufficient.

It appears that the defendant excepted to the decision, though no formal exceptions were made in writing.

The case was, afterwards, by order of the county court, and by consent of parties, referred, with all matters in dispute, to referees, who having heard the parties and the testimony by them introduced, reported;—that they found a balance of $108,62, due from the estate of Sampson Gale to the plaintiff, subject to the opinion of the court upon the questions of law arising from the following statement of facts and the statute of limitations.

On the 18th of March, 1837, the plaintiff and Rebecca Gale, who was then administratrix of the estate of Sampson Gale, made a written submission of all matters in difference then existing between the plaintiff and the said Gale's estate, to the arbitrament and final determination of Martin Kellogg and Alanson Nye, whose decision was to be final and

conclusive between the parties. On the same 18th of March, the said Rebecca employed an attorney to appear for her before said arbitrators at the hearing in the premises. The time of hearing, as agreed upon, was to be on the 22d day of the same month of March, at which time the arbitrators met, and the plaintiff, and said Rebecca's attorney appeared before the arbitrators, and a hearing of the matters in dispute was had, which matters were the same that are now submitted,—and the arbitrators made an award thereon, on the same day.

On the 21st day of March, 1837, the day previous to the hearing before the arbitrators, the said Rebecca was married to one James Wallace. Neither Wallace, nor his wife, appeared before the arbitrators, nor did it appear that Wallace knew of the arbitration, or that either of the arbitrators, or the plaintiff knew of said marriage until after the award was made and published.

Sampson Gale died in July, 1836. On the hearing before the referees, it was insisted by the defendant, that the statute of limitations barred all of the plaintiff's account that had accrued more than six years previous to that time. On this point, there was no other evidence than what arose from an inspection of the accounts. The plaintiff's account commenced in 1824, and was continued to 1836. The defendant's account ended in June, 1831. A portion of the plaintiff's account was for stone and stone work, the charges for which were never entered on any book.

The referees found, from the testimony of the plaintiff, that it was his custom to keep his charges for stone and stone work, on slips of paper, and, from other evidence, that the work was done, and the materials were delivered as charged in the plaintiff's account.

The referees further reported, that if the court should be of the opinion that the intermarriage of the said Rebecca with the said Wallace, operated a revocation of the arbitration, and that no portion of the accounts of the parties were barred by the statute of limitations, then they found the balance before stated, due to the plaintiff; but if the court should be of the opinion that the arbitration was not revoked by said marriage, then the referees found nothing due to either party.

If the statute of limitations, bars that portion of the accounts which accrued more than six years before the death of the said Gale, and the marriage of the said Rebecca to said Wallace, operated a revocation of the submission, then the referees found a balance of ten dollars and ten cents due from the estate of said Gale to the plaintiff.

The county court decided that the intermarriage of the said Rebecca, with said Wallace, operated a revocation of the submission, and that the statute of limitations barred no portion of the accounts.

The defendant excepted to the decision of the county court.

*N. Kinsman,* for defendants.

*L. B. Peck,* for plaintiff.

The opinion of the court was delivered by

REDFIED, J.—In this case, which was an appeal from commissioners, the plaintiff, in his declaration, joined counts both in assumpsit and book account. This, it is contended by defendant, was a fatal misjoinder of counts. It was decided some years since, at St. Albans, in a case not reported, that in a suit brought before a justice of the peace, and appealed into the county court, where the original declaration contained a count in assumpsit, and also one on book, the misjoinder was not fatal to the action, but the plaintiff might amend by striking out one of the counts. In appeals from commissioners on insolvent estates, the plaintiff may always join as many counts in the declaration in the county court, as he has causes of action. Indeed, he must do so, since there can be but one appeal, and but one declaration. For this reason the motion to dismiss and demurrer to the declaration were correctly overruled. There do not seem to have been any exceptions, formally taken, to the above decisions in the county court; if not, they could not, strictly, be revised here. But as the counsel have argued the points, as if they were formally before the court, we have considered and decided them. We do not, however, feel justified in encouraging so loose a practice.

The case having been referred, by rule of the county court, the remaining questions arise upon the report of the

referees. The defendant relies upon a former submission and award upon these same matters, which, if formal and regular, would preclude a recovery in the present action. *Bailey* v. *Lechmere*, 1 Esp. 377.

But, in this case, the submission on the part of the estate, was made by one Rebecca Gale, administratrix, on the 18th of March. The said Rebecca intermarried with James Wallace on the 21st of the same March. The award was made on the day following the marriage. There can be but little doubt that if a feme sole, after submitting to arbitration, intermarry before the award, the power of the arbitrator ceases. *Samin* v. *Norton*, 3 Keb. R. 9. The same doctrine was held in *Charnley* v. *Winstanley*, 5 East's R. 266, and it was further held, that the marriage was itself a breach of the covenant to abide the award. It is said in Roll's Abridgement, 331, that the intermarriage of one of several who have agreed to refer, is a revocation as to the others. It is there further said, "notice to the arbitrator is not necessary to determine his power." But, in the present case, the powers of the administratrix, by express provision of the statute, Ch. 44, § 38, upon her intermarriage, were "extinguished." By parity of reasoning, whatever power she had conferred upon the arbitrators or the attorney, must cease, else she could perpetuate her power beyond the limit fixed by the statute.

The only remaining question regards the statute of limitations. The intestate died in July, 1836, the plaintiff's account extended from 1824 to 1836, and the defendant's ended in June 1831. It is contended that all the plaintiff's account, accruing more than six years prior to the decease of the defendant's intestate, is barred by the statute of limitations.

It is now, I apprehend, well settled that debt or assumpsit will lie to recover the balance of a *current account*. *Insurance Co.* v. *Cummings*, *ante* 503 and cases there cited. Hence it has been considered that the plaintiff could not bring a separate action for each particular item in an account, unless the defendant had been guilty of some positive breach of the terms of the contract by which he became liable to account. *Allen* v. *Thrall*, 10 Vt. R. 255; and cases there cited. In ordinary cases of mutual dealings, no

obligation is created in regard to each particular item, but only for the balance. And it is the constantly varying *balance*, which is the debt. Any new item of credit, which the defendant pays with a view to lessen that balance, is equivalent to a new promise to pay what remains, and removes the statute bar till that time. It is apprehended, therefore, that the particular mode of keeping the account, whether on book or loose scraps of paper, or without any written charges, or whether it is all kept in one shape or in different forms, as in the present case, is unimportant. If all the items, in the expectation of the parties, have reference to, and are to be adjusted in, one accounting, it may be considered as one transaction, so far as the statute of limitations is concerned. When there has been a stating of the account, and a *balance agreed* upon, it is admitted, on all hands, that the statute of limitations, begins to run from that date. ' *Webber* v. *Tivill*, 2 Saund. 124, note 6. *Martin* v. *Delbo*, 1 Siderfin, 465. Same case, 1 Mad. 70. 1 Ventris, 89. 1 Levinz, 298. Hence, it is obvious, that an account, where the items are all on the *debit* side, will merit a different consideration, so far as the statute of limitations is concerned, from one where there are mutual dealings. In the one case, the obligation to pay, i. e. the cause of action, will arise from the date of each item, and will have reference to that item, separately, without regard to the general balance of the account, while, in the other case, the cause of action accrues from the last item of credit, and has reference to the *balance* of the general account, so that new items of debt have, strictly speaking, no effect upon the right of recovery in regard to any former item, while each new item of credit, made by consent of the defendant, or each new charge of the defendant, made understandingly, and upon the general account, is equivalent to a new promise to account and to pay the balance due. This, I apprehend, is now the settled doctrine of the courts in Westminster Hall. This doctrine is first stated by the English courts, as early as *Cotes* v. *Harris*, Bull. Nisi Prius, 149, 150, and is recognized by Lord Kenyon in *Cranch* v. *Kirkman*, Peake's Nisi Prius, 121, and is fully established in *Catling* v. *Skoulding*, 6 Term R. 189. It is true, in the

latter case, as in the present, there were mutual items, within the six years, but the decision is placed expressly upon the ground of a new promise or acknowledgment. It was formerly much discussed, in the English courts, whether this class of cases came within the exception in the statute in regard to merchants' accounts, which is contained in the English statute of 21 Jac. 1, c. 16, and in the statute of this state, almost in the same words. *Cranch* v. *Kirkman,* above cited. *Sherman* v. *Withers,* Chan. cases 152. It is now, however, considered, that cases coming within that exception are not in any way affected by the statute. *Godfrey* v. *Saunders,* 3 Willes R. 74, 79, 80, and notes to 2 Saund. Reports 127, *et seq.,* so that the reasoning of the courts upon that subject has no bearing upon the present question.

Judgment affirmed.