ARCHIBALD S. GREEN, Respondent, *v.* ABIJAH C. DISBROW, Appellant.

In an action to recover a balance alleged to be due upon a store account, for goods sold and delivered, where the defense was the statute of limitations, it appeared that defendant had delivered to plaintiff small quantities of butter and eggs at different times to be credited upon the account. *Held*, that the action was "upon a mutual, open and current account, where there have been reciprocal demands between the parties," within the meaning of the provision of the Code of Procedure (§ 95*) which declares that in such case the cause of action shall be deemed to have accrued from the time of the last item proved; and that as the last item was within six years the claim was not barred.

The words "reciprocal demands" in said provision means no more than "mutual accounts" as used in the former statutes.

An account of items on one side and payments on the other is not a mutual account; but when goods are delivered by a debtor to a creditor having an account against him it will not be presumed that they are delivered in payment; before they can be held to have been so delivered there must be proof that it was so intended, and that both parties so understood it.

It is not essential in order to make an account of mutual or reciprocal demands that each party shall have an independent cause of action against the other for his side of the account; the cause of action is only for the balance, and that party is only the debtor against whom the balance is found.

---

*See similar provision of Code of Civil Procedure. § 386.

The history of the statutory provisions upon this subject given, and the authorities thereon, collated and discussed.

*Gold* v. *Whitcomb* (14 Pick., 188); *Adams* v. *Carroll* (85 Penn., 209); *Peck* v. *N. Y. and L.* [*U. S.*] *M. S. S. Co.* (3 Bosw., 622), distinguished and limited.

*Lowber* v. *Smith* (7 Barr. [Penn.], 381), questioned.

Defendant's son J., who purchased the goods on defendant's account after testifying as a witness for plaintiff that the principal articles of clothing and groceries for himself and family were obtained of plaintiff, that he often went himself and sent others to plaintiff's store for goods, was asked and permitted to state under objection and exception, the quantity and amount of articles thus purchased of plaintiff. *Held*, no error.

Plaintiff, after proof that defendant looked over and examined the account upon his books, offered in evidence a paper proved to be a statement of the account so examined; it was objected to on the ground that the account had not been sufficiently proved; no objection was made because of the non-production of the books. The objection was overruled and the statement received. *Held*, no error. ·

(Argued September 29, 1879; decided November 18, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

The case upon a former appeal is reported 56 N. Y., 334.

*Samuel Hand*, for appellant. The referee erred in holding the statute of limitations not applicable, and that there was, between the parties, a *mutual*, open and current account, in which there were *reciprocal demands*. (*Catlin* v. *Skoulding*, 6 T. R., 189: *Chamberlain* v. *Cuyler*, 9 Wend., 126; New Code, § 386; Old Code, § 95;. *Lowber* v. *Smith*, 7 Barr. [Pa.], 381; *Ingram* v. *Sherard*, 17 S. & R., 347; *Hay* v. *Kramer*, 2 Watts & S., 137; *Adams* v. *Carroll*, 85 Pa., 509; *Gold* v. *Whitcomb*, 14 Pick., 188; *Kimball* v. *Brown*, 7 Wend., 322; *Warner* v. *Sweeney*, 4 Nev., 101; *Peck* v. *Liverpool Ship. Co.*, 5 Bosw., 226; *Hallock* v. *Losee*,

1 Sand., 220.)   Unless the sale to Jonathan was on defend-; ant's *sole credit*, his undertaking is collateral, and not being in writing is void.   (*Brady* v. *Sackrider*, 1 Sand. Sup. Ct., 514, 515; *Anderson* v. *Hayman*, 1 H. Bl., 120; *Cahill* v. *Bigelow*, 18 Pick., 369, 372; *Matron* v. *Wharam*, 2 T. R., 80; *Hill* v. *Raymond*, 3 Allen, 540; Browne on St. of Frauds, § 197; *Swift* v. *Pierce*, 13 Allen, 136; *Dixon* v. *Frazee*, 1 E. D. Smith, 32, 34.)   The referee was right in excluding plaintiff's books.   (*Vosburgh* v. *Thayer*, 12 J. R., 461; *Tomlinson* v. *Borst*, 30 Barb., 42.)

*Rufus W. Peckham*, for respondent.   A perfect case was made out for the admission of the books, during the running of the account, including the transcripts from the lost blotter.   (*Gilbert* v. *Sage*, 57 N. Y., 639; *Wilson* v. *Knapp*, 70 id., 596; *Payne* v. *Hodge*, 7 Hun, 612; affmd., 71 N. Y., 598.)   Under the facts, secondary evidence of the contents of the lost blotter was perfectly admissible.   (*Enders* v. *Sternburgh*, 2 Abb. Ct. of App., 31; S. C., 1 Keyes, 264; *Mandeville* v. *Reynolds*, 68 N. Y., 528.)   There was no error committed in the refusal to nonsuit, on the ground that there was a bar in the statute of limitations.   (*Kimball* v. *Brown*, 7 Wend., 322; *Catling* v. *Skoulding*, 6 T. R., 189; *Ramchander* v. *Hammond*, 2 J. R., 200; *Penniman* v. *Rotch*, 3 Met., 216; *Gold* v. *Whitcomb*, 14 Pick., 188; *Norton* v. *Larco*, 30 Cal., 126; *Warren* v. *Sweeney*, 4 Nev., 101; *Hay* v. *Kramer*, 2 W. & S., 137; *Ingram* v. *Sherard*, 17 S. & R., 347.)   This case was not barred by the statute, there being a mutual, open and current account, where there had been reciprocal demands.   (7 Wend. and 3 Met., *supra;* *Valentine* v. *Conner*, 40 N. Y., 248; *Chubbuck* v. *Vernam*, 42 id., 432; *Aberlander* v. *Spiess*, 45 id., 175.)   It was proper to charge interest upon the account, as charged by plaintiff.   (*McCollum* v. *Seward*, 62 N. Y., 316; *Mercer* v. *Vose*, 67 id., 56.)   The question to witness to state, as near as he could, the amount of the articles purchased of Green for Jonathan's use, and that of his family, was properly per-

mitted. (*Bank* v. *Cowan*, 2 Abb. Ct. of App., 88; *Crippen* v. *Morss*, 49 N. Y., 63.)

EARL, J. This action was commenced June 23, 1869, to recover upon a store account for goods claimed to have been furnished by the plaintiff to defendant's son, Jonathan Disbrow, at the request of the defendant and upon his credit.

We think there was sufficient evidence to justify the finding of the referee that the goods were furnished upon the sole credit of the defendant and upon his promise to pay for them. The only defense, therefore, to be considered here is the statute of limitations.

The account commenced on the 6th day of November, 1855, and continued to November 11, 1863; and during that time the defendant caused to be delivered to the plaintiff, by his son, certain small quantities of butter and eggs at different times to be credited upon the account, and the balance of the account, as adjusted by the referee is $745.55. All the items of plaintiff's account accrued before June 23, 1863, except items amounting in all to the sum of $104.29; and the last item of credit in the account is for eggs delivered to the plaintiff August 20, 1862.

The referee decided that there existed between the parties a mutual, open and current account, in which there were reciprocal demands, and hence that no part of the account was barred by the statute. The claim of the defendant is that the butter and eggs were delivered to and received by the plaintiff as payment upon the account, and hence that this is not a case of reciprocal demands, within the meaning of the statute; or in other words, that the defendant never had a right of action against the plaintiff for the butter and eggs, and hence that there were not reciprocal demands, within the meaning of the statute.

There was sufficient proof to justify the referee in finding that the butter and eggs belonged to the defendant and were delivered at his request. The evidence is that he directed his son and his wife to take the butter and eggs to the plain-

tiff and have them applied upon the account; and they took them to the plaintiff and he received them, and without any particular direction or agreement with him, he at once credited them in his account. No other account was kept of them except that kept by him. That this is a mutual, open and current account of reciprocal demands, within the meaning of the statute, I can entertain no doubt.

By the common law there was no stated or fixed time as to the bringing of personal actions. The time for the commencement of such actions was first regulated in England by the statute chapter 16 of 21, James I. But from the operation of that statute were excepted " such accounts as concern the trade of merchandise between merchant and merchant, their factors or servants." It was held that the exception in that statute applied only to the action of account or to an action on the case for not accounting, and, after considerable vacillation in the decisions, that accounts within the exception were not barred even if there were no items on either side of the account within six years: (*Robinson* v. *Alexander*, 8 Bligh, [N. S.], 352; *Inglis* v. *Haigh*, 8 Mees. & Welsb., 770.) It was also held that the exception in the statute extended only to accounts concerning the trade of merchandise between merchant and merchant, and not to other accounts. Other accounts were held to be within the statute, and the cause of action upon them was held to accrue from the last item of credit therein. In *Catling* v. *Shoulding* (6 T. R., 189), Lord KENYON, speaking of a case not within the exception in the statute, said : " I take it to have been clearly settled, as long as I have any memory of the practice of the courts, that every new item and credit in an account given by one party to the other is an admission of there being some unsettled account between them, the amount of which is afterwards to be ascertained ; and any act which the jury may consider as an acknowledgment of its being an open account is sufficient to take the case out of the statute." It was only mutual, open and current accounts that could come within the exception of the statute as to

merchants' accounts; and in the case of accounts not con-
cerning the trade of merchandise, to escape the bar of the
statute there must have been in the account an item of credit
within six years.

The statute of James, with slight verbal alterations, became
the law of this State, and the exception as to merchants' ac-
counts continued until the adoption of the Revised Statutes:
(see the "act for the limitation of criminal prosecutions
and of actions at law," passed April 8, 1801.)   And it was
early held that the law as enacted in this State should re-
ceive the same construction as the statute of James had
received in England: (*Ramchander* v. *Hammond*, 2 J. R.,
200.)

There was some confusion and uncertainty in the English
decisions, and there was soon some departure in this State
from the law as settled in England.

The provision of the Revised Statutes (2 R. S., 297, § 23)
is as follows: "In all actions of debt, account or assumpsit
brought to recover a balance due upon a mutual, open and
current account, the cause of action shall be deemed to have
accrued from the time of the last item proved in such account."
The language used in this section was not, it is believed,
intended to work any change in the prior law, as appears
from the note of the revisers to this section, which is as
follows: "This section is proposed instead of the expression
in section 5, 1 R. L., 186, 'other than actions which concern
the trade of merchandise between merchant and merchant,
their factors or servants.'   This has given occasion to numer-
ous decisions, some of them contradictory, which left the
law for many years quite uncertain.   It is now decided: (1.)
That the exception in the statute extends to all persons
whether merchants or others; (*Murray* v. *Coster*, 20 J. R.,
583); and most of the modern cases support this remark:
(2.) That where all the accounts have ceased for six years,
the demand is barred, and consequently that where there
is an open, current, mutual account within six years, the
whole account may be recovered; (2 J. R., 201; *Coster* v.

*Murray*, 5 J. Ch. Rep., 522; *William* v. *Gwyn*, 2 Saunders, 127; *Tucker* v. *Ives*, 6 Cow., 193); (3.) That the limitation of the statute applies as well to accounts between merchants as others, notwithstanding the exception (*Barber* v. *Barber*, 18 Vesey, 286). It has, therefore, been supposed better to express the actual state of the law in the language of the courts than to retain a phraseology which is incorrect in its terms and leads to misconstruction."

The Revised Statutes, so far as I can discover, produced no change in the decisions in this State; and after they took effect, the law was expounded as it had been before : (*Green* v. *Ames*, 14 N. Y., 225.)

The law as contained in the Revised Statutes remained in force until the Code, by which (section 95) it was provided as follows : " In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side."

The change in the phraseology was again, it is believed, not intended to work any change in the law. So say the codifiers, in a note to that section, in their original report to the Legislature. The only material change are the words " where there have been reciprocal demands between the parties," and these words they say were introduced " to obviate the obscurity in which the existing statute has been involved by loose expressions on the part of the courts, and to confine it to what is undoubtedly its true construction." And in the same note they speak of the accounts contemplated by this section as " mutual, open and reciprocal accounts," and say that the object of the provision, as contained in the Revised Statutes, as construed by the courts, was " to require that the accounts should be reciprocal in order to found a presumption in favor of items beyond six years ; " and they further say that " to put an end, if possible, to all doubt on the subject, the most explicit language is used in the section proposed."

The words as to reciprocal demands, introduced into the section of the Code, are frequently met with in decisions made prior to the Code. In the case of *Coates* v. *Harris* (Bull. N. P., 150), DENNISON, J. held that "the clause in the statute of limitations about merchants' accounts extended only to cases where there were mutual accounts and reciprocal demands between two persons;" and that is the earliest case I have found where the phrase "reciprocal demands" is used. It was there used simply to mean that the account must consist of items upon both sides, debit and credit. In *Coster* v. *Murray* (5 Johns. Ch., 522), the chancellor used the phrase in the same sense, as follows: "In the present case there was no account current between the parties. There are no mutual and reciprocal demands. The demand is all on one side." And it was also used in the same sense in *Edmondstone* v. *Thomson* (15 Wend., 554); *Belles* v. *Belles* (7 Halstead, 339); *Gulick* v. *The Turnpike Co.* (2 Green, 545); and in *Ingram* v. *Sherard* (17 Serg. & Rawle, 347). These cases in New Jersey and Pennsylvania were under statutes similar to that of James I. In Angell on Limitations, 135, it is said that "the rule that items within six years draw after them other items beyond that period is by all the cases strictly confined to mutual accounts, or accounts between two parties, which show a reciprocity of dealing;" at page 137, that "there must be a mutual, or as it is expressed, an alternate course of dealing;" at page 156, that the account "must be current, and mutual or reciprocal;" and at page 160, that "the account must be a mutual or reciprocal one consisting of debts and credits."

It will thus be seen that the phrase "reciprocal demands" is not new in the Code, and that it really means no more than was before meant by mutual accounts. It was introduced simply to settle definitely that there must be an account of mutual dealings,—not an account of items only upon one side, or an account of items upon one side upon which there had been simply payments not within six years upon the other side. It was intended to settle for ever such

questions as were raised in the cases of *Kimball* v. *Brown* (7 Wend., 322) ; *Edmondstone* v. *Thomson* (15 id., 554), and *Hallock* v. *Losee* (1 Sand. Sup. Ct. R., 220).

A payment generally upon an account within six years will take the whole account out of the statute, and it may be that it would make no difference whether the payment was in money or goods. But where goods are delivered by a debtor to his creditor who has an account against him, it will not be presumed that they were delivered in payment. Before they can be held to have been so delivered, there must be proof that it was so intended, and that both parties so understood it. An account of items upon one side and payments merely upon the other, is not a mutual account. The payments do not, in such case, enter into the account. They are at once applied and reduce the account. Such was the case of *Warren* v. *Sweeney* (4 Nevada, 101), to which our attention has been called. There an article of personal property was delivered by a debtor to his creditor, who had an account against him, expressly as payment.

Where there are mutual accounts between two persons, it is always the understanding that the account upon one side shall off-set that upon the other, and in law the debt due from the one to the other is only the balance left after the application in reduction of the accounts on the opposite side. In any form of action the recovery can only be for the balance. The very theory upon which this statute is based is that the credits are mutual, and that the account is permitted to run with the view of ultimate adjustment by a settlement and payment of the balance ; and this theory is recognized in the statute, as it mentions an action "brought to recover a balance due" upon an account. The action need not be in form to recover such balance, if such be its purpose or legal effect : (*Penniman* v. *Rotch*, 3 Metcf., 216.) In Angell on Limitations, 136, it is said : "Mutual accounts are made up of matters of set-off. There must be a mutual credit founded on a subsisting debt on the other side, or an express or an implied agreement for a set-off of mutual debts.

A natural equity arises when there is an existing debt on one side which constitutes a ground of credit on the other; or where there is an express or implied understanding, that mutual debts shall be a satisfaction or set-off *pro tanto* between the parties." In *Abbott* v. *Keith* (11 Vt., 525), REDFIELD, J., said : "In ordinary cases of mutual dealings no obligation is created in regard to each particular item, but only for the balance. And it is the constantly varying balance which is the debt." In *Hodge* v. *Manley* (25 Vt., 210), it is said : "It has uniformly been held that distinct and different items of charge, in an open and mutual account, do not constitute separate claims ; but that the claim or debt is found in the balance of the account ; and that it is the balance only that constitutes the claim of the party to whom it is due." And in *Trueman* v. *Fenton*, 1 Smith's Lead. Cases (H. & W.'s Notes), 966, it is said : "When men deal with an express or implied agreement that what each sells or delivers shall, instead of giving rise to a demand payable at once, stand as a payment or off-set for what has been or may be received from the other, their liability will be limited to and depend upon the balance as finally disclosed, and the statute will not begin to run until the date of the last item."

Here the goods delivered on behalf of the defendant were delivered in the way contemplated by these authorities. It was plainly understood that they were to enter into the account between the parties, to be adjusted when plaintiff's account should be settled. It is quite absurd and unnatural to suppose that the defendant intended that these small items should be treated and considered technically as payments upon plaintiff's account. That would have been contrary to the ordinary and usual way of dealing in such cases. His direction was that they be taken to the plaintiff to be applied upon his account. Applied how ? By a credit in the ordinary way customary in such cases. The plaintiff was to credit them on the opposite side of his account, so that in any future settlement between the parties, the defendant could have the benefit of them. In legal effect

they were sold to the plaintiff, the price of them to be credited on the account. It is true that the defendant could not have sued and recovered against the plaintiff for these items. But that was so simply because the plaintiff did not owe him anything. But suppose the defendant had in the same way delivered goods to the plaintiff, until the balance was in his favor. Would it then be denied that he could have sued and recovered against the plaintiff? It has never been decided that in order to make an account of mutual or reciprocal demands, each party must have, as claimed by the learned counsel for the appellant, a cause of action against the other for his side of the account. There is but one cause of action in such case, and that is for the balance. But were it not for the account on the opposite side, each party would have a cause of action for the items of his account.

In *Chambers* v. *Marks* (25 Penn. St., 296), Judge BLACK using language which might be applied to this case, said: " This was a suit for a balance on book account. The plaintiff's book showed several credits within six years, and it was proved, moreover, that the items of credit were delivered on account and credited agreeably to the defendant's request. The parties must settle as if the statute of limitations had never been passed." In *Norton* v. *Larco* (30 Cal., 126), the defendant being indebted to the plaintiffs on account, delivered to them an article of personal property, for which they gave him credit at a valuation agreed on ; and it was held that thereby the account between the parties became a mutual, open and current account of reciprocal demands.

I will now notice, so far as deemed important, cases to which our attention was called on behalf of the defendant. In *Gold* v. *Whitcomb* (14 Pick., 188), as stated in the head note, " a shopkeeper's account containing charges of articles sold to the defendants, some of them within six years before action brought, and also containing credits given more than six years before action brought, is not an account current or a mutual account, so as that the charges within the six years should draw the previous charges out of the operation of the

statute of limitations." The case is but briefly reported, without any opinion of the court. It does not appear what the items of credit were. They must have been payments of money. If not, the case is opposed to the undoubted law. In *Lowber* v. *Smith* (7 Barr. [Penn.], 381), the plaintiff, a powder manufacturer, sued the defendant to recover upon an account for powder, most of which was beyond six years, but in which he had credited the defendant for saltpetre and brimstone ; and he claimed that these credits saved the whole account from the bar of the statute. Two witnesses, who were in the employ of the defendant, testified that they never knew of a purchase of powder by the defendant of the plaintiff, as an ordinary transaction, but that it was always an exchange for saltpetre and brimstone, or these articles were delivered to the plaintiff to be worked up and returned in powder. The trial judge held, as matter of law, that these were mutual accounts between the parties. This was held error in the court of review, the decision there being that the evidence of the defendant tended to show that there was an exchange of one article for another, or in other words, a payment of one article by the delivery of another. The point decided was that an account is not rendered mutual by credits therein of payments either in money or property. But ROGERS, J. used language not sanctioned by authority, as follows : "A mutual account is when each has a demand or right of action against the other, as, for example, when A. and B. dealing together, A. sells B. an article of furniture, or any other commodity, and afterwards B. sells A. property of the same or a different description ; this constitutes a reciprocal demand, because A. and B. have a demand or right of action against each other ; " and he said this is not so when the sale is only by one to the other, whether it is to be paid for in cash or in kind ; and that the manner of payment could surely make no difference. This case is criticized in, 1 Smiths Leading Cases (H. & W's Notes) 967, and the reasoning of the judge who wrote the opinion is shown, I think, clearly to be unsound. The case of *Adams*

v. *Carroll* (85 Penn., 209), is one where all the items of the account were upon one side and only credits for money payments upon the other side ; and it was properly held not to be a mutual account. It is in reference to such an account that the improper language is again used that "to constitute mutual accounts there must be mutual demands. Each party must have a demand or right of action against the other." These Pennsylvania decisions were made under a statute, the language of which is like that in the statute of James I, and the *dicta* which I have quoted are not sanctioned by any English or American authority construing that statute. Similar language is used by HOFFMAN, J. in *Peck* v. *The N. Y. and Liverpool U. S. Mail S. S. Co.* (5 Bosw. 226); a case where all the items were upon one side and simply money payments upon the other side.

Without referring to more authorities, I think it may safely be said that there is no decided case in this country or England which sustains the contention of the defendant ; and that the phrase "reciprocal demands" has introduced no new element into our statute of limitations. It may be admitted that to constitute a mutual account of reciprocal demands, a defendant, when sued, must have an account against the plaintiff, which he can interpose as a set-off to the extent thereof. It is not needful, however, that each party shall have an independent cause of action against the other. The cause of action upon such an account is really in law for the balance due, and that party only is debtor against whom the balance is found, and that rule, as before stated, is recognized in the language of the statute. Suppose none of the plaintiff's account had been barred by the statute, and he had sued the defendant to recover the whole of it, ignoring the credits. Can it be doubted that, upon the facts disclosed in the evidence, he could have interposed his account for the butter and eggs as a set-off ? To hold otherwise and sustain the contention of the defendant, would be to substantially nullify the statute of limitations in actions brought to recover upon accounts, as such accounts generally arise and exist

under circumstances similar to those which appear here. That is, goods are delivered upon the one side to off-set or to be credited upon goods delivered upon the other side, the account being permitted to run for mutual convenience, and the balance to be paid by the party against whom, upon final adjustment, it shall be found to exist.

I conclude, therefore, that the referee committed no error in his decision as to the statute of limitations; and I will now proceed to examine other exceptions to which our attention has been called.

Defendant's son, Jonathan, was sworn as a witness for the plaintiff; and he testified that from November, 1855, to November, 1863, the principal articles of clothing and groceries for his family were obtained of the plaintiff, and that he often went himself and often sent others to plaintiff's store for goods. He was then asked this question: " State, as well as you can, the quantity and amount of the articles thus purchased at Green's store during these years, which were had and used in your family." This was objected to on the part of the defendant as immaterial and incompetent, and on the ground, as to goods not obtained by himself, that the witness had no knowledge as to where they came from. The objection was overruled, and the witness answered: "I should think they would amount to from $700 to $800; perhaps more." The question was not objectionable. It called for facts only within his personal knowledge; and if the answer went further than the question, that was not objected to.

There was proof, by the plaintiff as a witness, that the defendant had several times looked over his account books, and particularly that he did so in June, 1863, and that he then examined the account charged to his son; and the plaintiff testified that he had a statement of the account which was looked over by the defendant, one paper containing computation of interest, and another containing the whole account with interest. These papers were objected to separately as immaterial and incompetent, and on the

ground that the alleged indebtedness was not sufficiently proved, and also that the principle upon which the interest was figured was incorrect. The objection was overruled and the papers were received  In this there was no error. The paper as to the computation of interest need not be noticed, as no error is alleged as to the allowance of interest  The other paper, as I understand it, was a paper containing a statement of the account which the defendant had examined in the books. It was certainly competent to place the items thus examined before the referee. Strictly the items should have been read from the books. But this was not called for by the defendant, and the paper was not objected to as secondary. It seems to have been taken as of the same force as if the items had been read from the books.

Other exceptions have been examined, but they are not deemed of sufficient importance to require particular notice here.

The judgment should be affirmed, with costs.

All concur, except Church, Ch. J., not voting.

Judgment affirmed.