## MILLER v. LONGSHORE.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 234*)—PRESENTATION OF CLAIMS—DELAY IN REJECTION—EFFECT.

An account presented as a claim against the estate of decedent does not become established by the failure of decedent's executor to reject the claim until more than a year after its presentation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 833; Dec. Dig. § 234.*]

2. EXECUTORS AND ADMINISTRATORS (§ 225*)—CLAIMS—DEFENSE OF LIMITATIONS—DUTY TO INTERPOSE.

An executor is obliged to interpose the defense of limitations to a claim.

[Ed. Note.—For other cases, see Executors and Administrators, Dec. Dig. § 225.*]

3. LIMITATION OF ACTIONS (§ 54*)—"MUTUAL CURRENT ACCOUNT"—ACCRUAL OF CAUSE OF ACTION.

An account of a miller for supplies furnished on the credit of a physician, pursuant to his orders, and an account of the physician for professional services rendered the miller and his family during the period of the furnishing of the supplies, consist of reciprocal demands constituting a mutual current account, within Code Civ. Proc. § 386, declaring that a cause of action on a mutual current account accrues from the time of the last item proved in the account on either side.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 295–298; Dec. Dig. § 54.*]

4. EXECUTORS AND ADMINISTRATORS (§ 437*)—ENFORCEMENT OF CLAIMS—LIMITATIONS.

Where the attorney of an executor served on the attorney of the claimant a notice of rejection of the claim and immediately mailed a similar notice to the claimant, the claimant could treat the mailed notice as the notice prescribed by Code Civ. Proc. §§ 798, 1822, 2538, limiting actions on rejected claims after notice, etc., and an action begun within a year after service of such notice was begun in time.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1758; Dec. Dig. § 437.*]

Judgment on Report of Referee.

Action by Mary E. Miller, as executrix of Richard Miller, deceased, against Mary B. Longshore, executrix of Miles Longshore, deceased. From a judgment for plaintiff for $645.61, damages, and costs on the report of a referee, defendant appeals. Reversed, and new trial ordered.

The plaintiff's testator operated a gristmill in the county of Herkimer. The testator of the defendant was a physician with an office in Cold Brook, four

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

miles distant from the mill. The physician owned a farm near the gristmill, occupied by tenants. In pursuance of the direction of the doctor, the tenant in possession purchased feed and other supplies for the farm from the miller, and they were charged as they were made to the account of the doctor, who also made a few purchases personally which were included in the account, which continued from May, 1891, to May, 1903. The doctor died in April, 1904, and the miller in August of the same year. The doctor during all this period was the family physician of the miller, and kept a running account of the professional services rendered and the medicines furnished for the miller and his family. There were no credits on this account, and apparently neither presented his account to the other. The inference is proper that each knew the other had an account, although there is nothing to indicate that either knew the amount of his own, much less that of the other claim.

The plaintiff presented a verified statement of her account to the defendant May 1, 1905, showing the amount due from the defendant the sum of $293.05. No credits were given for any professional services rendered by the physician, nor was there any recognition of any part of his claim. After more than a year had elapsed without any notice of the claim being taken by the defendant, the plaintiff commenced a proceeding in Surrogate's Court to compel the defendant to account. On the 31st of August, 1906, the defendant rejected the claim of the plaintiff. The defendant on the 1st of June, 1906, presented to the plaintiff a verified itemized statement of the account of her husband against Mr. Miller aggregating $541.75. The only reference to the claim of the plaintiff was in the verification to the account, which, after stating the amount of her claim, continues as follows: "And that no payment has been made thereon, and that there are no offsets thereto with the exception of a certain claim amounting to the sum of two hundred ninety-three and 05/100 dollars, which has been filed with deponent by the executrix of the estate of the said Richard Miller, deceased, the justice of which claim is doubted by deponent." On the 25th of June, 1906, the attorney for the plaintiff personally served on the attorney for the defendant notice of the rejection of the latter's claim. Later, and on the same day, he mailed a formal notice of the rejection to the defendant at her residence. This action was commenced February 28, 1906, more than six months after the rejection delivered to the defendant's attorney, and within a year after the same was mailed to the defendant. No written consent was filed by the defendant that the claim might be heard on the judicial settlement of the account of the plaintiff, as prescribed in section 1822 of the Code of Civil Procedure, nor was any action or proceeding commenced by the defendant. On the 9th of April, 1907, the defendant served her answer, setting up as a counterclaim the claim she had presented to the plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles R. Carruth, for appellant.

Charles B. Hane, for respondent.

SPRING, J. The issues were tried before a referee, who allowed the plaintiff's claim in full. The books of the plaintiff's testator were received in evidence, and other proof was given to support the validity of the account presented. The referee found that the account was not rejected until more than a year after its presentation, and that the miller kept honest books, and that, as matter of law, the claim was a valid one for the full amount and interest without any specific finding of fact that the articles and produce sold embodied in the account were charged at reasonable prices. The conclusion of law establishing this account seems to be on the ground that the claim had become liquidated by the long delay of the defendant in rejecting the claim:.

[1] The account did not become established by this failure of the

defendant to reject the claim. Schutz v. Morette, 146 N. Y. 137, 40 N. E. 780; Matter of Callahan, 152 N. Y. 320, 46 N. E. 486; Matter of Edmonds, 47 App. Div. 229, 62 N. Y. Supp. 652; Matter of Brown, 76 App. Div. 184, 188, 78 N. Y. Supp. 297; Matter of Jacobs, 109 App. Div. 293, 96 N. Y. Supp. 133; Coombs v. Joerg, 125 App. Div. 615, 110 N. Y. Supp. 6.

[2] The account of the plaintiff commenced in 1891, and, if the defendant's claim is wholly disallowed, a considerable part of the demand of the plaintiff was barred by the statute of limitations, although the defendant has not interposed that defense, as she was obliged to do. Butler v. Johnson, 111 N. Y. 204, 212, 18 N. E. 643; Schutz v. Morette, 146 N. Y. 143, 40 N. E. 780. The plaintiff urges that two credits in the account have kept alive the entire account. The proof shows, however, that the cash comprising these two credits was paid for definite purchases, and not to apply on the account. In any event, as a new trial is to be had, the validity of the plaintiff's claim should be specifically determined on the merits.

[3] I think the two accounts consisted of reciprocal demands, constituting a mutual, current account within section 386 of the Code of Civil Procedure. Green v. Disbrow, 79 N. Y. 1, 35 Am. Rep. 496; Sandel v. Sommers, 131 App. Div. 537, 115 N. Y. Supp. 357. In order to make the accounts mutual, it is not essential that they be kept only by one of the parties, or by debit and credit in form. Ross v. Ross, 6 Hun, 80. They need not be entered in a book, or even written at all. The parties must expect that the two accounts are to be adjusted together, the balance making up the indebtedness. The accounts must be unadjusted, existing demands, the one against the other; and, if they meet these requirements, they are within the definition of mutual accounts. The determination is not a question of bookkeeping, but depends upon the transactions themselves and the intent of the parties. It is quite common where two men have open accounts against each other that each keeps a record of his own charges. He does not know the items against him. They are mutual accounts, and any other rule would operate unjustly and in contravention of the intent of the parties. The testators of the parties to this action allowed their accounts to run along for years without any adjustment. It is a reasonable inference that each relied upon the validity of his own account to offset the charges against him. They perhaps assumed there was no substantial difference between the sum total of each account, or their conduct may be ascribed to carelessness. No matter, as long as each was cognizant in a general way of both accounts, believing the balance unpaid was the actual indebtedness.

[4] In the procedure to adjust these accounts it was necessary for each party to assert her rights according to the practice prescribed by statute. Failure to do this might result in the defeat of the claim of the delinquent party on technical grounds. The account presented by the plaintiff not containing the items of the defendant's account, it was important for the latter to present her own account, which she did. When this account was repudiated and rejected, she must commence an action for its enforcement within the time limited, or suffer the con-

sequence. While the balance due constituted the debt, if the defendant neglected to counterclaim or omitted any act of procedure essential to the maintenance of her demand, her claim might become wholly barred. If the plaintiff in her own account had recognized the validity of the defendant's demand, of course, this rule would not obtain. If the defendant seasonably acted upon the rejection of her claim so that its merits can properly be considered by the trial court, then the two accounts must be treated as mutual accounts. If the notice of rejection served on the attorney for the defendant is to prevail, more than six months had elapsed thereafter before the counterclaim was interposed, or the action commenced, and consequently the claim was effectually barred. Code Civ. Proc. § 1822. There is no proof of any specific authority given to the attorney for the defendant to receive the notice of rejection of her claim. She testified he was employed generally by her, and added:

"He has taken charge of the presentation of my claim against the estate of Richard Miller since there was anything done, and I have left all matters with him now since we had any trouble with reference to the presentation of my claim against the estate of Richard Miller."

Probably this is sufficient to show he acted within the scope of his authority. Heinrich v. Heidt, 106 App. Div. 179, 94 N. Y. Supp. 423; Lockwood v. Dillenbeck, 104 App. Div. 71, 93 N. Y. Supp. 321. And it would be effective, even though not reported to the defendant by her attorney. Gardner v. Pitcher, 109 App. Div. 106, 95 N. Y. Supp. 678.

It seems, however, that the attorney who served the notice of rejection on behalf of the plaintiff, for some reason, was not satisfied with the service made, and thereafter on the same day mailed a similar notice to the defendant at Cold Brook. She interposed the counterclaim within one year from the service of this notice. I am inclined to think the defendant had the right to treat this notice as the one served upon her. The statute, barring the rejected claim if not sued upon in six months, must be strictly construed against the person asserting it. In this case its operation debars consideration of the claim of the defendant upon the merits, although the referee has found that Dr. Longshore kept honest books of account and a valid claim for some amount existed in his favor in reduction or extinguishment of the one presented by the plaintiff. The plaintiff elected to serve notice of rejection upon the executrix, and, if any advantage enures to her because of that service, the plaintiff cannot complain. He wished apparently to be in the attitude of having a proper rejection of the claim, if that made on the attorney was insufficient. If it develops that the service on the defendant's attorney was adequate, the plaintiff ought not to be permitted to maintain that the service on the defendant was superfluous, if she recognized and acted upon it as the valid rejection.

Section 798 of the Code of Civil Procedure, in force when all the matters referred to were occurring, provided:

"Where it is prescribed in this act, or in the general rules of practice, that a notice must be given, or a paper must be served within a specified time,

before an act is to be done; or that the adverse party has a specified time, after notice or service, within which to do an act, [if service is made through the postoffice double the time specified is allowed]."

The section is applicable to the present situation. Matter of Smith, 58 Misc. Rep. 493, 111 N. Y. Supp. 1085. Section 1822 of the Code of Civil Procedure, which prescribes the statutory limitation relied upon in this case, is, of course, a part of the act mentioned in section 798. The latter section is in chapter 8, tit. 6, art. 3, which article is entitled "Service of Papers." Section 2538 of the Code of Civil Procedure is in chapter 18, tit. 2, which is entitled "Process and service thereof." Section 2538 enumerates certain portions of the act which are made applicable to Surrogates' Courts and to the procedure therein, "except where a contrary intent is expressed," etc. Among the portions enumerated is article 3, containing section 798. Notice of rejection of the claim was one step in the procedure essential to secure its determination in accordance with section 1822. All of which is commented upon by the learned surrogate in the case cited.

The question was not considered at all in Heinrich v. Heidt, supra, relied upon by the respondent's attorney. I think the claim of the defendant was not barred when she interposed it as a counterclaim. The judgment should be reversed.

Judgment reversed, and a new trial ordered before another referee, with costs to appellant to abide event. All concur; KRUSE and ROBSON, JJ., in result only.