**FORBO–GIUBIASCO, S. A., Plaintiff,**

v.

**CONGOLEUM CORPORATION,
Defendant.**

No. 78 Civ. 5390.

United States District Court,
S. D. New York.

Jan. 23, 1979.

---

See also D.C., 463 F.Supp. 1243.

Toren, McGeady & Stanger, P. C., New York City, for plaintiff; David Toren, Jules E. Goldberg, Michael J. Kunstler, Samuel B. Mayer, New York City, of counsel.

D'Amato & Lynch, New York City, for defendant; Robert E. Meshel, Margaret M. O'Neill, New York City, Phillip B. Chavot, Richard T. Laughlin, of counsel.

LASKER, District Judge.

Forbo-Giubiasco, S.A. (Giubiasco) is a licensee of Congoleum Corporation (Congoleum) by virtue of an agreement entered into by their respective predecessors in August of 1972. Paragraph 20 of the agreement provides that if Congoleum grants a license "at a royalty rate more favorable to [a later] licensee than the royalty rate provided for in this agreement," Giubiasco shall have the option within thirty days after notification of such other agreement to elect to pay royalties under the more favorable provisions.

During the last week of April, 1978, Giubiasco learned that Congoleum in May of 1973 had granted a license to DLW Aktien Gesellschaft (DLW) at a royalty rate which Giubiasco contends is more favorable to DLW than are the royalty terms of the Congoleum-Giubiasco agreement. As a result, on May 9, 1978 Giubiasco advised Congoleum that it was electing to pay royalties under the DLW arrangement rather than under the terms of its own contract. By letter of June 14, 1978, Congoleum rejected Giubiasco's election. Accordingly, in November, 1978 Giubiasco filed the complaint in this suit seeking a declaratory judgment that its construction of its own contract and its relationship with the DLW contract was correct. Not long after, by letter of December 13, 1978 Congoleum advised Giubiasco of its intention to terminate Giubiasco's license for alleged failure on Giubiasco's part to pay proper royalties to Congoleum. Giubiasco now moves for a preliminary injunction restraining Congoleum from terminating its license agreement pending a decision by this court on the request for a declaratory judgment.

The relevant provision of the Giubiasco-Congoleum contract reads:

"In the event of sales of the LICENSED PRODUCTS to a related company, the net SALES PRICE will be deemed to be that which would have been received by LICENSEE, had such LICENSED PRODUCTS been sold by LICENSEE at LICENSEE's then current price to an independent purchaser."

The comparable provision of the DLW Agreement reads:

"In the event that LICENSEE sells LICENSED PRODUCTS to a subsidiary of LICENSEE, then LICENSEE shall pay the same royalty as LICENSEE would have paid had the LICENSED PRODUCTS been sold by LICENSEE to a third party at the closest equivalent distribution or marketing level."

Giubiasco argues that the DLW agreement is more favorable to the licensee than is its own agreement with Congoleum. Its argument runs as follows: royalty rates in their totality consists of two elements: 1) the royalty rate proper (5% in each contract) and 2) the base to which the percentage rate is applicable. According to Giubiasco, the DLW agreement is more favorable because 1) the base to which the rate is applicable is narrower (subsidiary only in the DLW agreement against affiliated companies in Giubiasco) and 2) the base applies to selling prices at a lower level ("at the closest equivalent distribution or marketing level" in DLW versus "current price to an independent purchaser" in Giubiasco).

In opposition, Congoleum takes the position that the "most favored licensee" clause (Paragraph 20) of the Giubiasco-Congoleum agreement benefits Giubiasco only if Congoleum grants a license to another company "at a royalty rate more favorable to [a later] licensee," that the differences between the DLW agreement and the Giubiasco agreement are not differences of "royalty rates" but of other terms and that, accordingly, Giubiasco is not entitled to the benefits of the DLW agreement. To recite these contentions is to indicate that Congoleum's complaint and motion have "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); accord *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).

Giubiasco has also demonstrated that it will be irreparably harmed if an injunction is not granted. At an evidentiary hearing on the motion, Peter Demarmels, Managing Director of Giubiasco, testified that Giubiasco manufactured and sold some products and imported and sold others; that 90% of the items it manufactured were fabricated under the Congoleum license and could not be manufactured by Giubiasco if the license were terminated; that termination would result not only in the elimination of 70–75%[1] of the dollar volume of the company's sales but would impose substantial affirmative obligations upon Giubiasco. Specifically, termination of Congoleum-licensed work would result in the requirement that Giubiasco pay layoff or severance benefits to approximately 115–125 of its production employees at a cost of $2,000,000. to $3,000,000. Measured against the total Giubiasco stockholder equity of $4,000,000., the impact of a $2,000,000. to $3,000,000. payment would clearly be devastating.

Injunctive relief therefore seems appropriate, but the conditions of that relief must be considered. Granting an injunction without conditions would mean that Congoleum would alone bear the financial burden of lack of use of the disputed royalties during the period the case is *sub judice.* While Giubiasco is entitled, pending disposition of the suit, to be protected against the termination of its license, it is not equitable that Congoleum should sustain the entire financial burden flowing from the issuance of an injunction.

At the evidentiary hearing both Demarmels and Albert Bishoff conceded that although it would impose a substantial burden on Giubiasco to make available to Congoleum the royalty payments here in dispute, Giubiasco could secure such funds either through its parent corporation or with the backing of its parent's credit. 99.9% of the Forbo-Giubiasco is owned by Forbo A.G. The most recent consolidated balance sheet of Forbo A.G. and its subsidiaries (Exhibit A to the Affidavit of Peter Demarmels in Support of Plaintiff's Motion for Summary Judgment) shows that at December 31, 1977, the net worth of Forbo A.G. and its subsidiaries (for all practical purposes all are wholly owned corporations) was 208,335,000 Swiss Francs. It is evident from

1. Demarmels testified that 80% of the company's dollar volume of sales was attributable to manufactured products and that 90% of the manufactured products were covered by the Congoleum license.

these figures that while it might be a severe burden on Forbo-Giubiasco to make available any substantial portion of the royalty funds, it would not be difficult for Forbo A.G. to do so. Since the issues raised by Giubiasco's complaint are by their very nature uncertain as to outcome (even though sufficiently serious to justify injunctive relief), it is equitable that the parties should share the burden imposed by the issuance of an injunction.

Accordingly, Giubiasco's motion for a preliminary injunction restraining Congoleum from terminating the Congoleum-Giubiasco license pending final decision on the complaint in this case is granted subject to the condition that Giubiasco pay to Congoleum fifty percent of the amount currently in dispute between them, to be repaid to Giubiasco with interest from the date of payment, in the event that Giubiasco ultimately prevails in this litigation.

This memorandum constitutes the findings of fact and conclusions of law required by Rule 52, Federal Rules of Civil Procedure.

Submit decree on notice.