FORBO–GIUBIASCO S. A., Plaintiff,

v.

CONGOLEUM CORPORATION,
Defendant.

No. 78 Civ. 5390 (MEL).

United States District Court,
S. D. New York.

June 24, 1981.

Toren, McGeady & Stanger, P.C., New York City, for plaintiff; David Toren, Jules E. Goldberg, Michael J. Kunstler, Samuel B. Mayer, New York City, of counsel.

D'Amato & Lynch, New York City, for defendant; Robert E. Meshel, New York City, of counsel.

LASKER, District Judge.

Forbo-Giubiasco, S.A. ("Giubiasco") is a licensee of Congoleum Corporation ("Congoleum") by virtue of an agreement entered into by their predecessors in August, 1972. Under the non-exclusive, royalty-bearing agreement, Congoleum licensed Giubiasco to make, use and sell certain floor covering products on which Congoleum claims to own patent rights. The agreement provides that if Congoleum grants a license "at a royalty rate more favorable to (a later) licensee than the royalty rate provided for in this agreement," Giubiasco shall have the option within thirty days after notification of such other agreement to elect to pay royalties under the more favorable provisions. In addition, the agreement contains a "Related Company Clause providing that:

> "In the event of sales of the LICENSED PRODUCTS to a related company, the net SALES PRICE will be deemed to be that which would have been received by LICENSEE, had such LICENSED PRODUCTS been sold by LICENSEE at LICENSEE's then current price to an independent purchaser."

In 1978 Giubiasco learned that Congoleum had granted a license to another company, DLW, at a rate which Giubiasco contends is more favorable than its license rate. Giubiasco advised Congoleum that it was electing to pay royalties under the more favorable rate and Congoleum rejected the election. Giubiasco then filed this suit, seeking a declaratory judgment that its construction of its own contract and its relationship to the contract between Congoleum and DLW is correct and that it is

entitled therefore to pay royalties at the same rate as provided in the Congoleum-DLW contract. Shortly thereafter, Congoleum advised Giubiasco that it intended to terminate Giubiasco's license on the ground that Giubiasco failed to pay proper royalties to Congoleum for sales of the licensed products to related companies pursuant to the Related Company Clause.

In January 1979, we granted Giubiasco a preliminary injunction restraining Congoleum from terminating Giubiasco's license pending final decision on the complaint in this case. *Forbo-Giubiasco, S.A. v. Congoleum Corporation*, 463 F.Supp. 1243 (S.D.N.Y. 1979). Subsequently, Congoleum filed counterclaims for 1) additional royalties due under the Related Company Clause, 2) damages for Giubiasco's fraud in falsely representing to Congoleum that its sales of licensed products would be made in accordance with the Related Company Clause, 3) damages for Giubiasco's own use of the licensed products, and 4) reformation of the license agreement to accurately reflect the meaning intended by the Related Company Clause.

We first consider Giubiasco's motion to amend its reply and for summary judgment on the ground that Congoleum's counterclaims with respect to the Related Company Clause are precluded by the results of an arbitration proceeding between Congoleum and Krommenie in which a substantially similar Related Company Clause was construed. The motion is denied.[1]

## I.

Forbo-Krommenie, B.V. ("Krommenie") and Giubiasco are sister companies. All their stock is owned by a common parent company, CLU. Like Giubiasco, Krommenie is a licensee of Congoleum under a non-exclusive, royalty-bearing agreement entitling Krommenie to make, use, and sell certain floor covering products on which

Congoleum claims to own patent rights. The contract between Krommenie and Congoleum is substantially similar to the contract between Giubiasco and Congoleum. In particular, the Related Company Clause of the Krommenie contract with Congoleum provides:

"In the event of sales to a related company, [or of use] of the LICENSED PRODUCTS, the NET SALES PRICE will be deemed to be that which would have been received by LICENSEE had such LICENSED PRODUCTS been sold by LICENSEE AT LICENSEE'S then current price to an independent purchaser."

On May 17, 1976 Congoleum demanded arbitration with Krommenie of the royalties due under their license agreement, claiming that Krommenie had paid insufficient royalties on transfers to related companies. On September 12, 1978 the arbitration panel issued its award, determining that a sum of royalties was due Congoleum and establishing a formula for calculating royalties due under the Related Company Clause.

Giubiasco contends that, under principles of issue preclusion, Congoleum is bound by the formula established in the Congoleum/Krommenie arbitration for the computation of royalties due on transfers to related companies. Giubiasco maintains that the issue in the Congoleum/Krommenie arbitration, the construction of the Related Company Clause, is identical to that raised by Congoleum's counterclaims in this suit because the Related Company Clauses of both the Congoleum/Krommenie contract and the Congoleum/Giubiasco contract are essentially the same. Since Congoleum had a full and fair opportunity to litigate the issue of the proper construction of the Related Company Clause, Giubiasco argues, Congoleum is precluded from relitigating that issue and therefore any recovery by Congoleum must be limited to the formula set forth in the arbitration award.[2]

---

1. In light of our disposition of Giubiasco's motion for summary judgment, we need not consider Congoleum's contention that the motion is untimely.

2. Giubiasco also argues that the court's stay of a case between Congoleum and Forbo-Forshaga AB, Forbo-Betriebs SA, and Forbo SA involving the Related Company Clause pending resolution of this case supports its position that

Congoleum contends that issue preclusion is inapplicable in the circumstances because the negotiating contexts of the two contracts differed and therefore requisite identity of issues is lacking. Congoleum relies on the facts that 1) the Congoleum/Giubiasco contract was negotiated six years later than the Congoleum/Krommenie contract, 2) different negotiators were involved, 3) the negotiation postures were different, 4) differing royalty rates resulted, and 5) Congoleum expressed different attitudes on the subject of related company sales in the two negotiations.

In particular, Congoleum emphasizes that, prior to the signing of the Congoleum/Giubiasco contract, Krommenie, through its official, Mr. D. P. Don, made the unexpected concession that Krommenie itself had not properly applied the Related Company Clause in computing royalties on transfers to related companies and that accordingly it owed Congoleum additional royalty payments. Congoleum contends that Krommenie's subsequent repudiation of Don's concession occurred after the effective date of the Congoleum/Giubiasco contract and that the negotiations for the Congoleum/Giubiasco contract proceeded on the assumption, at least on the part of Congoleum, that the Related Company Clause would be interpreted in accordance with Don's correspondence.

Moreover, Congoleum argues that the fact that the arbitration decision referred to specific facts relevant to Krommenie's marketing position (such as the differential in the yearly average price between domestic and export sales to non-related companies) establishes that the formula derived in the arbitration depended on the particular facts of Krommenie's business practices and cannot be applied to the distinct factual circumstances of this case. Finally, Congoleum contends that, as a matter of law, issue preclusion may not be applied unless an identical transaction or occurrence is at issue.

Giubiasco replies that the factors relied on by Congoleum are not relevant to the question whether the issues in the Congoleum/Krommenie arbitration were identical to the issues here. Giubiasco contends that, because the Related Company Clause of each contract was identically drafted by Congoleum, it must be interpreted in the same manner, regardless of the differences in negotiators, in the percentage royalty rates of the two contracts, and in the knowhow provisions of the two contracts. Moreover, Giubiasco claims that the purported concession by Don cannot be relied on by Congoleum here because those facts were considered by the arbitrators who decided that the Don letters did not affect the interpretation of the Related Company Clause. It follows, according to Giubiasco, that the issue whether Don's statements support Congoleum's construction of the Related Company Clause falls within the scope of issues litigated in the arbitration proceeding and within the scope of issues which Congoleum is precluded from raising here.

Giubiasco argues further that the formula derived by the arbitrators was not based exclusively on the market position of Krommenie because the arbitrators also had before them similar information concerning Krommenie's sister companies, including Giubiasco. In any event, Giubiasco contends, the difference in sales practices between the two companies would result in Giubiasco enjoying an even greater percentage discount than the percentage awarded to Krommenie, applying the arbitrator's rationale. Finally, Giubiasco contends that issue preclusion does not depend on an identical transaction or occurrence under New York law.

## II.

The doctrine of issue preclusion, by which a party in a subsequent proceed-

---

the issues here and in the Congoleum/Krommenie arbitration are identical. This argument is unpersuasive. While the court found the issues in the various lawsuits between Congoleum and the Forbo companies to be the same, it never considered whether the Krommenie contract also presented the same issues or whether the arbitration between Congoleum and Krommenie presented the same issues. See Affidavit of David Toren of September 9, 1980, Ex. G.

ing may bind his opponent on the basis of a former proceeding in which the party asserting issue preclusion was not a party, depends upon an identity of issues in the two proceedings. *Schwartz v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (Ct. App.1969); *see also Vavolizza v. Krieger*, 33 N.Y.2d 351, 352 N.Y.S.2d 919, 308 N.E.2d 439 (Ct.App.1974). While Congoleum's argument that no identity of issues can exist unless the same transaction, act or occurrence is at issue is unpersuasive, *see American Insurance Co. v. Messinger*, 43 N.Y.2d 184, 190 n.2, 401 N.Y.S.2d 36, 371 N.E.2d 798 (Ct.App.1977) (" 'issue preclusion' refers to discrete issues of fact or law rather than to claims or causes of action"), we agree that Giubiasco has failed to carry its "burden of showing that the issue (of the interpretation of the Related Company Clause in the Congoleum/Giubiasco contract) was identical and necessarily decided," *Schwartz, supra* 24 N.Y.2d at 73, 298 N.Y. S.2d 955, 246 N.E.2d 725, in the Krommenie arbitration.

The meaning to be accorded the Related Company Clause in this case depends upon the parties' intent when they agreed to *this* contract. It is at least clear that the proper interpretation will depend on extrinsic evidence, since the Congoleum/Krommenie arbitration demonstrates that the words of the Related Company Clause are ambiguous. The fact that Congoleum used the identical language in the Giubiasco Related Company Clause as it had used six years earlier in the Krommenie Related Company Clause would suggest that the two provisions should be interpreted in the same manner only if the same negotiating context for both contracts existed. However, Congoleum has presented uncontradicted evidence supporting the proposition that the understanding between Congoleum and Giubiasco in 1971 was not the same as the understanding between Congoleum and Krommenie in 1965.

According to the affidavit of John P. Murphy, who was employed at Congoleum during the relevant time periods and was involved in Congoleum's licensing program, the licensing agreement between Congoleum and Krommenie was the first such agreement in which Congoleum was involved. Consequently, it was drawn from scratch. No discussions were held on the specific meaning or purpose of the Related Company Clause. (Murphy Affidavit at p. 3). Moreover, at the time, Krommenie and its sister company, Giubiasco, were acting independently.

In 1971, negotiations between Congoleum and CLU, the parent of Giubiasco and Krommenie, began with respect to a new group licensing arrangement between Congoleum and CLU. At that time, CLU expressed an intention to coordinate the activities of its subsidiaries more closely than it had when the Krommenie licensing agreement was executed. Subsequently, CLU informed Congoleum that because of legal obstacles it could not itself be the Swiss licensee under the proposed group license agreement and that Giubiasco was to be the Swiss licensee. In these negotiations important substantive provisions of the Krommenie contract were modified including, for example, the royalty percentage rate and the provisions for the transfer of newly developed know-how. (Murphy Affidavit, pp. 4–5).

In August of 1971, during the negotiations between CLU and Congoleum concerning the Giubiasco licensing agreement, Congoleum received a letter from D. P. Don, an official of Krommenie, unanticipatedly stating that Krommenie had been underpaying royalties on sales to related companies under the Related Company Clause. Don assured Congoleum that the situation would be corrected and that proper royalties would be paid in the future. (Murphy Affidavit, pp. 5–6 and Ex. C). Correspondence between Congoleum and Krommenie concerning the outstanding royalties referred to in the Don letter continued for a year and, in August 1972, Congoleum received a letter from Don which enclosed a $50,000. check as first payment towards royalties owed. According to Murphy, he was aware of the lower payments which Krommenie had made on sales to related

companies and of Krommenie's intention to make good on those royalties while he was negotiating the Giubiasco contract with CLU. He understood that CLU concurred in Krommenie's position with respect to the payments due under the Related Company Clause. (Murphy Affidavit, p. 8). After August 1972, the effective date of the licensing agreement between Congoleum and Giubiasco, Max Zimmerman, the president of CLU, informed Congoleum that he repudiated the position taken by Don with respect to the payment of royalties on transfers to related companies. According to Murphy, Congoleum never would have signed the Giubiasco agreement had it not believed that the related company issue had been resolved by Don's correspondence. (Murphy Affidavit, p. 13). This conclusion is supported by the affidavit of Robert O'Donnell, who was also involved in the negotiations on behalf of Congoleum.

In sum, Congoleum's evidence demonstrates that the negotiating posture of Congoleum for the Congoleum/Giubiasco contract had changed from their negotiating posture with respect to the Krommenie contract. In particular, the Murphy affidavit establishes that the circumstances that surrounded the parties' agreement to the Related Company Clause were significantly different in the Giubiasco contract than in the Krommenie contract. Whereas Congoleum believed that Krommenie was acting independently of its sister companies when the Congoleum/Krommenie contract was signed, it believed at the time of the Congoleum/Giubiasco agreement, based on CLU's representations, that the sister companies' business would be closely coordinated and therefore the provisions for governing transfers between related companies assumed heightened importance. Moreover, Congoleum claims to have reasonably believed at the time of the Congoleum/Giubiasco agreement that Krommenie had acquiesced in Congoleum's construction of the Related Company Clause based on the Don correspondence. Giubiasco has presented no evidence to support the proposition that Congoleum should not have relied on the Don correspondence in its negotiations with Giubiasco. Thus, whatever the Related Company Clause may have meant in the Krommenie contract, it is entirely possible that the parties intended and understood that it would mean something different in the Giubiasco contract. The evidence of the differing circumstances surrounding the two licensing agreements establishes that the issue of the interpretation of the Related Company Clause in the Krommenie contract is not identical to the issue of the interpretation of the same clause in the Giubiasco contract and therefore Congoleum is not precluded from raising the issue by the results of the Congoleum/Krommenie arbitration.

Giubiasco's contention that Congoleum is precluded from raising the Don concession in this action by virtue of the arbitration decision mistakes the distinct questions presented to the arbitrators and to the court. The arbitrators were concerned with the construction of the *1966* contract between Krommenie and Congoleum. While, as the arbitrators found, the *1971* Don concession may not have been relevant to interpreting the parties' intent in 1966, it cannot be said that the concession is irrelevant to determining the parties' intent when they executed the Congoleum/Giubiasco contract *in 1971*. To the contrary, it appears to be an important piece of extrinsic evidence of what the parties to the Congoleum/Giubiasco contract understood the Related Company Clause to mean.[3]

3. In addition, we agree with Congoleum that the arbitration decision is at best unclear with respect to whether the formula it established was based on the special facts of Krommenie's market position rather than a direct construction of the contractual language. Giubiasco argues that the receipt by the Krommenie arbitrators of information relating to Giubiasco's market position establishes that Krommenie's market position was not alone dispositive to them. The argument cannot be conclusive since it is not known what relevance the arbitrators placed on that information. It may well be that the arbitrators believed that Giubiasco's sales data were relevant merely because Giubiasco was one of the related companies to which Krommenie had transferred licensed goods. In any event, it is clear that the arbitra-

## III.

As noted above, in January 1979, we granted Giubiasco a preliminary injunction restraining Congoleum from terminating the licensing agreement pending final decision on the complaint. We imposed the condition that "Giubiasco pay to Congoleum fifty percent of the amount currently in dispute between them, to be repaid to Giubiasco with interest from the date of payment, in the event that Giubiasco ultimately prevails in this litigation." *Forbo-Giubiasco v. Congoleum Corporation*, 463 F.Supp. 1240, 1243 (S.D.N.Y.1979). Congoleum now moves to modify the preliminary injunction to provide that Giubiasco pay Congoleum an additional $800,000. representing one-half of the royalties in dispute for the years 1976–1979 or, in the alternative, for a mandatory injunction or attachment entitling it to the same sum pending final decision on the complaint. Giubiasco cross-moves to dissolve the preliminary injunction on the condition that Congoleum return the money it now holds pursuant to our earlier order. In addition, Giubiasco moves for summary judgment on its claim for a ·declaratory judgment that Congoleum's termination letter is void and Congoleum moves for summary judgment on Giubiasco's third cause of action.

■ The motions of both Congoleum and Giubiasco relating to the preliminary injunction are denied. These motions represent an attempt to relitigate the conditions of the preliminary injunction. Congoleum had the opportunity at the time the injunction was issued to argue that it would be entitled to greater payments as its accountants determined that greater royalties were in dispute. Giubiasco had the opportunity to argue that it would be entitled to have the money returned if it decided that it prefers the money over the injunction. Both positions are inconsistent with the terms under which we granted the injunction and neither party has demonstrated that a change in circumstances warrants reconsideration of our earlier decision. Moreover, we agree with Congoleum that it would be inequitable to require it to return the money now that Giubiasco has decided it would prefer the money over the injunction when Giubiasco has enjoyed the benefits of the injunction for the past thirty months. We agree with Giubiasco that Congoleum has failed to demonstrate irreparable harm or a likelihood that Giubiasco will not be able to satisfy an eventual judgment and thus has not justified modification of the injunction, issuance of a mandatory injunction, or an attachment. The proper solution for the parties' mutual dissatisfaction with present circumstances is to move expeditiously to trial and a conference will be called in the near future toward that end.

## IV.

■ Giubiasco's motion for summary judgment on its claim for a declaratory judgment that Congoleum's termination letter is void is based on the novel proposition that its commencement of this declaratory judgment action served to preserve the status quo relationship between the parties for the pendency of the suit and therefore Congoleum had no right to terminate Giubiasco. Giubiasco's reliance on the underlying policy of the declaratory judgment as a remedy permitting a declaration of contested rights without forcing the plaintiff to expose itself to damages or loss, *see Luckenbach Steamship Company v. United States*, 312 F.2d 545 (2d Cir. 1963), is misplaced. Declaratory relief provides an opportunity for judicial determination of rights *before* action is taken subjecting a party to the possibility of liability. Here, however, Giubiasco had already subjected itself to possible termination by paying royalties under the Related Company Clause according to its own interpretation of the contract. The filing of this

---

tors did not purport to decide, through the receipt of that data, what the proper construction of the Related Company Clause in the Giubiasco/Congoleum contract is, and the fact that the basis of the arbitration decision can only be determined through speculation itself supports the determination that it cannot serve to preclude Congoleum from litigating the meaning of the Related Company Clause in this case.

declaratory judgment action therefore cannot alone serve to prevent Congoleum from termination rights under the contract for the alleged *past* underpayments on the part of Giubiasco. It is true that, to date, Congoleum has been restrained by the court from terminating the contract. Without the preliminary injunction, however, this action would present the ordinary issue whether Congoleum had a contractual right to terminate Giubiasco. If Giubiasco prevailed, it would be entitled to damages for wrongful termination. The filing of this garden-variety breach of contract suit under the rubric of the declaratory judgment remedy cannot serve to change its essential nature. Indeed, as Congoleum argues, acceptance of Giubiasco's contentions on its motion for summary judgment would have the absurd result of enjoining the opposition party from exercising its rights with respect to *past* transactions merely because a declaratory judgment suit had been filed. The declaratory judgment remedy was never intended to fill such an office. The express purpose of the Declaratory Judgment Act is to provide a *milder* alternative to the injunction remedy. *See* Hart & Wechsler, *The Federal Courts and the Federal System*, p. 1037 (2d ed. 1973). Moreover, even when declaratory relief is granted, it does not have the legal effect of an injunction. *See Bituminous Coal Operators' Association, Inc. v. United Mine Workers of America*, 585 F.2d 586 (3d Cir. 1978).

## V.

Finally, Congoleum's motion for summary judgment on Giubiasco's third cause of action is denied. First, with respect to Giubiasco's claim that Congoleum breached the notification provisions of the licensing agreement, a genuine issue of material fact exists at least as to whether the license agreement was intended to require Congoleum to notify Giubiasco of nonfinal decisions adverse to its patent rights, such as the original decisions of the German and Swedish patent appeals offices to vacate and reverse the initial decisions granting Congoleum Letters Patent. While it appears that the German and Swedish patent appeals were decided in Congoleum's favor, the contractual language is at best ambiguous with respect to whether nonfinal decisions were encompassed by the notification provisions.

Second, Congoleum's argument that the Act of State doctrine precludes consideration of Giubiasco's claim for damages and a refund of royalties on account of Congoleum's alleged pre-filing activity is without merit. The Act of State doctrine precludes judicial determination of the legality of acts of foreign states undertaken within their own territories which might embarrass the executive department in its conduct of foreign affairs. *Banco National de Cuba v. Sabbatino*, 376 U.S. 398, 427–29, 84 S.Ct. 923, 939–41, 11 L.Ed.2d 804 (1963). In this case, however, we are not asked to determine the legality of a foreign government's acts, but rather to determine the legality of *Congoleum's* activities in obtaining foreign patents. Indeed, Giubiasco's claim does not purport to challenge a foreign government's grants of patents. Instead, Giubiasco challenges Congoleum's right to collect royalties under the licensing agreement when, as it alleges, Congoleum has failed to comply with the laws of foreign countries in obtaining the patents upon which the licensing agreement is based. In these circumstances, the Act of State doctrine does not apply, for it cannot be said that a determination by an American court that a private company failed to present relevant information to a foreign patent office could interfere with our government's conduct of foreign affairs. In sum, we agree with the court's holding in *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1294 (3d Cir. 1979), that

> "the grant of patents for floor coverings is not the type of sovereign activity that would be of substantial concern to the executive branch in its conduct of international affairs ... the granting of patents per se, in substance a ministerial activity, is not the kind of government action contemplated by the act of state doctrine ... " 595 F.2d at 1294.

Nor are we persuaded by Congoleum's attempt to distinguish *Mannington Mills*. While it is true that the court in *Mannington Mills* noted that the antitrust claims there involved American commerce, it is clear that this factor was not dispositive to its holding that the Act of State doctrine did not apply. Instead, the *Mannington* court concluded that a grant of a patent is not the type of activity contemplated by the doctrine. This case is identical to *Mannington Mills* in that we are not asked to determine the validity of a foreign patent but to determine whether the foreign patents were obtained through inequitable conduct. A finding against Congoleum on this point would affect only the rights between Congoleum and Giubiasco, not Congoleum's foreign patent rights generally.

 Third, Congoleum's contention that Giubiasco's claim for fraud accrued before the date of the licensing agreement and therefore is barred under the six-year New York statute of limitations for fraud is unpersuasive. While Giubiasco's claim is based on alleged misrepresentations occurring before execution of the agreement, the alleged misrepresentations related to Congoleum's delivery of know-how *after* the execution of the agreement. Accordingly, Giubiasco's cause of action for fraud could not have accrued until Congoleum actually delivered the know-how and allegedly violated its earlier representation by providing only information in the public domain. Only then could Congoleum's earlier statements become or become known as a misrepresentation. Since Congoleum did not deliver the know-how until December 26, 1972, and Giubiasco commenced this suit on November 8, 1972, Giubiasco's claim is not barred by the six year limitations period of N.Y.C.P.L.R. § 213. Because we agree with Giubiasco on this point, we need not consider whether Congoleum waived its statute of limitation defense by not raising it in its answer. However, we note that Giubiasco's contention that it is permitted six years from the time it discovered the fraud to bring suit is inaccurate. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737 (2d Cir. 1979).

Finally, Congoleum's argument that the contractual definition of confidential information did not encompass information which had already been made public and therefore it did not violate the agreement by delivering non-confidential know-how begs the question whether the information which the parties agreed would be provided to Giubiasco was intended to be confidential information.

\* \* \* \* \* \*

In sum, all pending motions are denied. It is so ordered.