**FORBO–GIUBIASCO S. A., Plaintiff,**

v.

**CONGOLEUM CORPORATION, Defendant.**

No. 78 Civ. 5390 (MEL).

United States District Court, S. D. New York.

Jan. 3, 1980.

---

Toren, McGeady & Stanger, P. C., New York City, for plaintiff; David Toren, Michael J. Kunstler, Samuel B. Mayer, New York City, of counsel.

D'Amato & Lynch, New York City, for defendant; Robert E. Meshel, Margaret M. O'Neill, Philip Vernon Chabot, New York City, of counsel.

LASKER, District Judge.

Forbo-Giubiasco, S.A., ("Giubiasco") manufactures and sells cushioned vinyl products under a license from Congoleum Corporation ("Congoleum"), which owns patents on those products. Giubiasco sells licensed products to wholesalers and retailers only in Switzerland; licensed products which it manufactures for consumption outside Switzerland are sold to "sister companies"

—that is, other subsidiaries of Giubiasco's parent, Forbo, S.A.—which act as national distributors for Giubiasco in countries other than Switzerland. This action grows out of a dispute between Giubiasco and Congoleum respecting the royalties Giubiasco pays on those sales.[1]

The licensing agreement between the parties requires Giubiasco to pay Congoleum royalties of five percent of the "net sales price" of licensed products "made and used or sold" by it. The agreement provides that when Giubiasco sells licensed products to "a related company," the "net sales price" will be deemed to be the net price that Giubiasco would have received had the products been sold at Giubiasco's "then current price to an independent purchaser." It is Giubiasco's position that this refers to "an independent purchaser at the equivalent distribution or marketing level," that its sales to sister corporations constitute bona fide, arms-length transactions, and that therefore the price its sisters actually pay is the price Giubiasco would receive from an independent national distributor. Accordingly Giubiasco asserts that it has complied with the terms of its licensing agreement in paying royalties based on the actual price received from its sisters for licensed products sold to them.

Giubiasco contends that if it is incorrect in interpreting the language "independent purchaser" as referring only to an independent purchaser "at the equivalent distribution or marketing level," then it may take advantage of the "most favored licensee" provision of the licensing agreement to achieve the same result. That provision states, in short, that if Congoleum grants licenses to others containing more favorable royalty provisions than those that apply to Giubiasco, Giubiasco may elect to substitute the more favorable provisions for those contained in its own license. Congoleum has executed a licensing agreement with DLW A.G. ("DLW") which provides that when DLW sells licensed products to "subsidi-

aries," it will pay the royalty it would have paid had the sale been to "a third party at the closest equivalent distribution or marketing level." Giubiasco argues that to the extent the royalty provisions in its own agreement respecting sales to "related companies" are not equivalent to those in DLW's, it may apply the provision of the latter in computing its royalties.

In sum, it is Giubiasco's position that 1) because its sales to sister corporations are arms-length transactions, the price paid by its sisters is that which would be paid by an independent national distributor, and 2) that under the provisions either of its own agreement or those of DLW's, that is the price which Giubiasco should use in computing royalties. Congoleum contests both Giubiasco's factual assertion as well as its interpretation of the licensing agreements.

Giubiasco commenced this action against Congoleum seeking a declaratory judgment that it is and has been paying proper royalties to Congoleum. Congoleum's original answer contained five counterclaims, the first and third of which sought damages from Giubiasco for breach of the licensing agreement. On Giubiasco's motion, the second and fifth counterclaims were stricken without prejudice to repleading those counterclaims to conform with Rule 9(b) of the Federal Rules of Civil Procedure, and Congoleum's fourth counterclaim was stricken for failure to state a claim.

Congoleum has since repleaded its second and fifth counterclaims, and Giubiasco moves again to strike them. Congoleum also moves to amend its answer to add three counterclaims, which resemble its original fourth counterclaim. Each counterclaim is considered in the order set forth in the proposed amended answer submitted by Congoleum on its motion.

## 1. The Second Counterclaim

■ Giubiasco moves to strike Congoleum's repleaded second counterclaim, which

1. We have discussed the facts of this case in detail on prior occasions. See 463 F.Supp. 1240 (S.D.N.Y.1979); 463 F.Supp. 1243 (S.D.N.Y.1979); No. 78 Civ. 5390, opinion of March 6, 1979 (unpublished). A factual summary is provided here for the sake of clarity and completeness.

charges Giubiasco with fraud, and seeks compensatory and punitive damages. Congoleum alleges that when Giubiasco executed the agreement with Congoleum, it did not intend to honor its contractual obligations as to royalties on sales of licensed products to sister corporations, and that it has not. Such allegations state a cause of action for fraud—"a contractual promise made with the undisclosed intention not to perform it constitutes fraud," *Sabo v. Delman*, 3 N.Y.2d 155, 162, 164 N.Y.S.2d 714, 718, 143 N.E.2d 906, 909 (1957)—and, if proven, would warrant recission of the contract, *id.* at 162, 164 N.Y.S.2d at 719, 143 N.E.2d 906.[2] The "circumstances constituting fraud" are stated with the particularity required by Rule 9(b), except with regard to one of three damage allegations. Congoleum asserts that as a consequence of its reliance on Giubiasco's false representations, it was 1) deprived of royalties due it, 2) precluded from issuing licenses to third parties, and 3) "compelled to expend considerable managerial, executive and fiscal resources in dealing with" the alleged fraudulent representations. As to the first and third elements of compensatory damages alleged, Congoleum's pleading is adequate. However, as to the second element, there is no indication whatsoever (especially since Giubiasco's license is not exclusive) how Giubiasco's allegedly fraudulent representations precluded Congoleum from licensing third parties to produce cushioned vinyl products. Accordingly, Giubiasco's motion to strike Congoleum's second counterclaim is granted only to the extent of striking paragraph 27(b) of Congoleum's proposed amended answer. Although Congoleum may not be entitled of right to a second opportunity to replead the stricken allegations, *compare Denny v. Barber*, 576 F.2d 465, 470–71 (2d Cir. 1978) *with Goldberg v. Meridor*, 567 F.2d 209, 213 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978), it may do so, but any such repleading shall be final.

**2.** Congoleum seeks recission as part of its proposed fourth counterclaim, which we do not allow. Congoleum may, if it wishes, amend its

### 2. The Fourth Counterclaim

Congoleum moves to amend its answer to add a fourth counterclaim that is essentially the same as, though somewhat narrower than, its original fourth counterclaim. The motion to amend is denied.

In the proposed fourth counterclaim, Congoleum seeks recission of the licensing agreement on the grounds of mutual mistake. However, Congoleum has not alleged a *mutual* mistake—it alleges simply that when Congoleum and Giubiasco signed the licensing agreement, each of them entertained different notions as to how it was to be interpreted. If this is true, they believed different things when they contracted, not the same thing, and it is only when contracting parties entertain the same (mistaken) belief, that the doctrine of mutual mistake has any application. Giubiasco and Congoleum have entered into a written agreement intending to be bound by its terms, but with different conceptions of what those terms require. If their differences were so great that it could realistically be said that Congoleum and Giubiasco never had a "meeting of the minds," recission might be appropriate, but no such allegation is made.

In short, Congoleum's fourth counterclaim fails to state a claim and consequently there is no reason to grant Congoleum's motion to add it to the answer.

### 3. The Fifth Counterclaim

Giubiasco moves to strike Congoleum's repleaded fifth counterclaim. That counterclaim alleges, in brief, that Congoleum has granted licenses similar to that granted Giubiasco to some of Giubiasco's sister corporations; that those corporations sell licensed products to Giubiasco at prices lower than they would receive on sales to independent purchasers; that as a result those sister corporations pay Congoleum a lower royalty than is due under their agreement with Congoleum; that Giubiasco pays no royalties to Congoleum with respect to

second counterclaim to include a prayer for recission as well as damages.

its resale in Switzerland of licensed products purchased from its sisters; and that accordingly Congoleum has been "deprived of the royalties which properly were due it under the subject License Agreement [i. e. its agreement with Giubiasco]."

Quite obviously, these allegations fail to state a claim against Giubiasco, since Giubiasco's agreement with Congoleum requires it to pay royalties only on licensed products *it* manufactures, not on products manufactured by others and purchased by Giubiasco for resale. If Congoleum believes that Giubiasco's sisters are not honoring their royalty commitments to it, it should sue them rather than Giubiasco.

### 4. The Sixth Counterclaim

■ In its proposed sixth counterclaim, Congoleum requests reformation of its agreement with Giubiasco on the grounds that it does not reflect the parties' mutual intent when they originally contracted, which was, according to Congoleum, and in the words of the proposed sixth counterclaim, that

> "where Plaintiff Giubiasco sold Licensed Product(s) to any of its sister (related) companies, the "Net Sales Price", for the purpose of computing royalty payments, was to be the price which would have been received by Plaintiff Giubiasco had it sold [the] particular Licensed Product(s) in question to an independent third party purchaser in an [sic] good faith, or arms-length sale."

This counterclaim clearly pleads mutual mistake as grounds for reformation of the contract, and Congoleum's motion to amend its answer to include such a counterclaim is granted. We note, however, that Giubiasco's only dispute with Congoleum in this regard is that it believes the contract already states what Congoleum seeks to have it reformed to state.

### 5. The Seventh Counterclaim

■ Congoleum's proposed seventh counterclaim is quite difficult to fathom. In substance, Congoleum alleges that it has sustained damages in addition to those flowing from Giubiasco's alleged breach of contract and alleged fraud, and requests an equitable accounting to determine the amount of such "additional damages." The nature of these "additional damages" is nowhere specified, or even hinted at. In its memorandum in support of its motion to amend, however, Congoleum states that it seeks an accounting

> "because Plaintiff has willfully refused to allow Defendant's accountants to review materials necessary to Defendant to compute the full amount of royalties which are owed by the Plaintiff and, thus, it is not possible for Defendant and Counter-Claimant Congoleum to determine the full extent to which it has been damaged by the acts of Plaintiff as complained of."

To the extent that Congoleum needs information in the hands of Giubiasco in order to prepare for the trial of this action, its remedy exists in the discovery provisions of the Federal Rules of Civil Procedure. To the extent that Congoleum is concerned about recovering the full amount due it on its claims, it may rest assured that if it prevails on any of its causes of action against Giubiasco, it will have ample opportunity to prove its damages.

Congoleum's motion to amend its answer to assert the proposed seventh counterclaim is denied.

\* \* \* \* \* \*

For the reasons stated, Giubiasco's motion to strike Congoleum's second counterclaim is denied, except that paragraph 27(b) of Congoleum's amended answer is stricken, but Congoleum may, if it chooses, replead the stricken allegations within twenty days of the filing of this Memorandum, and may amend the second counterclaim to include a prayer for recission. Giubiasco's motion to strike Congoleum's proposed fifth counterclaim is granted. Congoleum's motion to amend its answer to add the proposed fourth and seventh counterclaims is denied, and its motion to amend its answer to add the proposed sixth counterclaim is granted.

It is so ordered.