**Amelia RIIS, Plaintiff,**

v.

**MANUFACTURERS HANOVER TRUST COMPANY, Defendant.**

**No. 85 Civ. 3962 (RWS).**

United States District Court,
S.D. New York.

March 31, 1986.

As Amended April 21, 1986.

H. Chester Grant, New York City, for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City, for plaintiff; David F. Dobbins, Dietrich L. Snell, of counsel.

Robert M. Rosenblith, New York City, for defendant; Manuel W. Gottlieb, Larry S. Candido, of counsel.

## OPINION

SWEET, District Judge.

Defendant Manufacturers Hanover Trust Company ("MHT") has moved for an order dismissing plaintiff Amelia Riis' ("Riis") amended complaint pursuant to Rule 12(b)(6) and Rule 56, Fed.R.Civ.P., for failure to state a claim upon which relief can be granted, pursuant to Rule 9(b), Fed.R. Civ.P. for failure to assert fraud with par-

ticularity, and for sanctions pursuant to Rule 11.[1] As MHT's challenge to Riis' complaint is supported by material outside the pleadings, and both·parties have submitted voluminous supplementary affidavits and exhibits, this motion will be treated as one for summary judgment. MHT's motion for summary judgment is granted because Riis' claims are barred by the applicable statute of limitations.

**Facts**

This action concerns a financing in which MHT and a Norwegian bank, Den norske Creditbank ("DnC") obtained a mortgage on a vessel owned by a group of Norwegian shipping companies as collateral for an outstanding loan which MHT and DnC had extended to the companies. The chronology of this transaction is central to the statute of limitations bar to the claim.

In 1973, MHT and co-lender DnC made a $32 million dollar loan to a group of Norwegian shipping companies known as the Olsen-Ugelstad companies (collectively "O-U"), one of which is a company called A/S Falkefjell which held title to the bulk ship M/S Sognefjell. Riis, the daughter of the founder of O-U and holder of a significant percentage of O-U stock, entered into an agreement on April 5, 1974 (the "Easter Agreement") with A/S Falkefjell and its principals under which Falkefjell agreed to transfer the M/S Sognefjell to Riis in exchange for all of her shares in O-U. A/S Falkefjell never delivered the ship because it failed to obtain the required export license needed to deliver the ship as provided in the Easter Agreement, and this delay thwarted Riis' pre-arranged sale of the ship to the government of India for $12 million dollars.

In July of 1974, Riis commenced arbitration proceedings against O-U for damages and delivery of the ship, and on March 18, 1975, the parties concluded their presentation of evidence to the arbitration panel. While the parties awaited the decision of the arbitration board, O-U issued an $8 million dollar mortgage on the M/S Sognefjell jointly in trust to Ole Lund ("Lund"), an O-U officer, and Christian Haneborg (a Norwegian lawyer and independent advisor for MHT and DnC) "for the benefit of all creditors" in an attempt to preserve the asset for the creditors of O-U. On April 26, 1975, Haneborg issued a receipt for the mortgage which acknowledged the pendency of the arbitration proceeding and provided that the mortgage would be "redelivered" to O-U if Riis did not prevail in the arbitration. Also on April 26, 1975, Haneborg sent a letter to MHT and DnC which referred to the mortgage on the ship and confirmed that the mortgage had been obtained to prevent the possible depletion of assets in the O-U companies by a revitalization of the Easter Agreement or the transfer of ship title to Riis. The negotiations and decisions concerning this mortgage were memorialized by Erling Naper ("Naper") a DnC bank officer (the "Naper Memorandum").

On May 2, 1975, the arbitration board announced its decision to dissolve the Easter Agreement. The ship, therefore, remained an asset of the O-U companies and on June 13, 1975, Lund and Haneborg transferred the mortgage to DnC, and the ship was subsequently sold. Subsequently the Court of Appeals vacated the arbitration board's decision to dissolve the Easter Agreement because O-U had concealed its insolvency from the arbitration panel. The Norwegian Supreme Court reversed this determination in 1983, forcing Riis to relitigate her rights under the Easter Agreement from the beginning.

In June, 1981, Riis commenced an action against DnC in connection with DnC's involvement in obtaining the ship mortgage. As part of this action against DnC in the Oslo Municipal Court, Riis obtained deposition testimony from DnC and officers and documentation of the mortgage transaction, which she presented to the Court in her December 6, 1982 pleadings. They in-

---

**1.** MHT originally requested an order pursuant to local rule 39 for Riis' failure to post the $10,000 bond ordered by this court on Novem-

ber 8, 1985. Request for such relief has been withdrawn because of the subsequent filing of the bond.

cluded, *inter alia,* the depositions of Haneborg, Naper and John Melander ("Melander"), the managing director of DnC, taken by Riis' counsel Engelschion, and a letter which Melander had written to DnC on April 10, 1980 outlining the purpose in obtaining the mortgage. Riis also submitted the mortgage receipt and Haneborg's April 26, 1975 letter to DnC and MHT. DnC submitted a defense brief on January 4, 1983.

In September, 1983, Einar Riis, husband of Amelia Riis, conferred with MHT officers in Oslo and New York. According to Einar Riis, the MHT officers denied any involvement with obtaining the mortgage and placed all responsibility on DnC. Finally, in December, 1983, DnC produced the Naper Memorandum or Naper's contemporaneous notes of the negotiations surrounding the 1975 mortgage of the ship.

**Discussion**

Riis' amended complaint sets forth two claims arising from this complex chronology of events. First, Riis claims that MHT's acts in obtaining the ship mortgage in 1975 were fraudulent because it knew that: (1) O–U was insolvent during that time, (2) the arbitration panel would not have rescinded the Easter Agreement had it known of the insolvency; and (3) that the "secret" obtaining of this mortgage during the pendency of the arbitration would strip Riis of her equitable title to the vessel. Riis claims that MHT made a "deliberate and false representation that the shipowner was solvent at the time of the conveyance," (Riis' Memorandum in Opposition, p. 12) upon which she and the arbitration panel relied in rescinding the agreement.

Riis' second claim is one of "fraudulent concealment."[2] She contends that MHT's alleged act of concealing the mortgage on the vessel by registering it in the name of Lund and Haneborg and MHT's subsequent denial of knowledge of the facts underlying the mortgage constitute a fraudulent scheme to conceal its "appropriation" of the ship. The complaint alleges that MHT concealed its involvement and knowledge of the mortgage from Einar Riis and thwarted Riis' investigation of the loss of the ship. According to Riis, she was unaware of the extent of MHT's knowledge and participation in the mortgage until she obtained the Naper Memorandum in December, 1983, and only then could she allege that MHT knew that she was mistakenly relying on O–U's solvency in the arbitration.

MHT contends that Riis has not satisfied the pleading requirements for fraud and fraudulent concealment under New York law, as her claim is both substantively defective and is barred by the statute of limitations. According to MHT, the face of Riis' amended complaint illustrates that she has long had the knowledge necessary to assert this claim; knowledge of the alleged fraudulent mortgage, knowledge of MHT's involvement in securing that mortgage and knowledge of MHT's purpose and intent (the "fraudulent intent") in obtaining the mortgage. Indeed, MHT claims that Riis' own pleadings submitted in the Norwegian action against DnC in 1982, and the depositions which Riis' own attorney took of DnC officers and MHT's agent Haneborg, demonstrate that she has been sleeping on her rights while the statute of limitations has run on her claims.

MHT contends that Riis inserted a fraudulent concealment claim in the amended

---

**2.** Although Riis' memorandum of law discusses a claim of "fraudulent conveyance," (p. 14–16) in the context of the second claim for relief in her amended complaint, this theory or claim does not appear in her amended complaint, which alleges only that MHT "fraudulently concealed" it's participation in obtaining the mortgage. Riis has no standing to assert a fraudulent conveyance claim because she is a shareholder and not a creditor of O–U. *See* N.Y. Debtor and Creditor Law, §§ 273, 276 (McKin-

ney's 1945); *Commodity Futures Trading Commission v. Probber International Equities Corp.,* 504 F.Supp. 1154 (S.D.N.Y.1981). This claim even if properly asserted would be barred by the six-year statute of limitations for constructive fraud. *See Quadrozzi Concrete Corp. v. Mastroianni,* 56 A.D.2d 353, 392 N.Y.S.2d 687 (2d Dept 1977) which would have run from the date of the alleged fraudulent conveyance on April 26, 1975 until April, 1981.

complaint to meet MHT's statute of limitations defenses. According to MHT, this defense is insufficient to toll the statute of limitations because Riis knew all the facts which she now alleges were concealed from her, and it fails to state an affirmative cause of action as a matter of New York law.

### Statute of Limitations

MHT has asserted the statute of limitations as a threshold bar to the maintenance of this action. According to MHT, the statute of limitations has run on both the fraud and fraudulent concealment claims because Riis' amended complaint and her pleadings in the Norway action demonstrate that she knew all that was required to timely assert a fraud claim and the objectively assessed state of her knowledge of MHT's involvement and intent surrounding the obtaining of mortgage belies any claim that these facts were successfully concealed from her.

The New York statute of limitations for fraud is applicable to this diversity action, *see Guaranty Trust Company of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and provides in relevant part:

The following actions must be commenced within six years:

8. an action based upon fraud; the time within which the action must be commenced shall be computed from the time the plaintiff or the person under whom he claims discovered the fraud, or could with reasonable diligence have discovered it.

Civil Practice Law and Rules ("CPLR") 213(8) (McKinney Supp.1984).

This six year limitation on fraud actions is supplemented by a provision which grants a two-year grace period in fraud actions computed from the time of reasonable discovery:

[W]here the time within which an action must be commenced is computed from the time when facts were discovered could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.

CPLR 203(f) (McKinney Supp.1984).

These two sections combine to permit a claimant to bring a fraud action within "six years from commission on the fraud or two years from discovery, whichever is longer." *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 746 (2d Cir. 1979); *citing Hoff Research & Development Laboratories, Inc. v. Phillipine National Bank*, 426 F.2d 1023 (2d Cir.1970) (footnote omitted).

There is no dispute that the alleged fraud in obtaining the ship mortgage occurred in April, 1975, far outside the six year statute of limitations for commission of the fraud. Riis claims, however, that although she knew the mortgage was obtained in 1975, she was unaware of MHT's fraudulent "intent" in obtaining the mortgage until after September, 1983, when the Naper Memorandum was produced. Only then, according to Riis, was she able to assert that MHT fraudulently—*i.e.* with knowledge of Riis alleged equitable title to the ship and with knowledge of O–U's impending insolvency—participated in obtaining the mortgage. Therefore, the two year period from discovery began in September, 1983 and had not run by the time Riis commenced this action in May, 1985.

Riis' argument runs into difficulty, however, because her submissions in this and prior actions demonstrate that she possessed enough knowledge by at least 1982 and probably earlier, to formulate this fraud claim, and is chargeable with that knowledge under the relevant case authority.

New York law provides an objective standard for determining when a potential claimant has enough information upon which to base a claim of fraud. All that is needed to commence the running of the statute is "knowledge of facts sufficient 'to suggest to a person of ordinary intelligence the probability that he has been defraud-

ed'." *Renz v. Beeman,* 589 F.2d 735, 751 (2d Cir.1978), *cert. denied,* 444 U.S. 834, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (citations omitted). When the victim of the alleged frauds knows sufficient facts from which the inference of fraud flows, the statute of limitations begins to run. *Klein v. Bower,* 421 F.2d 338, 343–44 (2d Cir.1970); *Ectore Realty Co., Inc. v. Manufacturers Trust Co.,* 250 A.D. 314, 294 N.Y.S. 96, 100 (1st Dep't 1937); *Sielcken-Schwarz v. American Factors,* 265 N.Y. 239, 246, 192 N.E. 307 (N.Y.1934).

■ Riis' pleadings in this action and her submissions in the Norwegian actions against DnC and O–U show that she not only should have discovered MHT's alleged fraudulent intent but also that she in all probability actually knew of these facts in 1982. Riis admits in her amended complaint that she "discovered in the summer of 1980 that MHT secretly obtained the mortgage in April 1975 on the M/S Sognefjell and asserted this act as another basis for voiding the arbitration award. At this time, however, Riis was unaware that MHT had obtained the mortgage fraudulently, *i.e.* with actual knowledge of Riis' equitable title to the M/S Sognefjell" (Amended Complaint ¶ 15). While Riis places heavy emphasis on the distinction between her knowledge in 1980 that the mortgage was obtained "secretly" (*i.e.* in trust "for the benefit of all creditors" in the name of Lund and Haneborg) as opposed to her knowledge in 1983 that it was obtained "fraudulently" (*i.e.* with knowledge of Riis' equitable claim to ownership), such incremental increased knowledge of the allegedly fraudulent scheme did not prevent the statute of limitations from running. *Sielcken-Schwarz v. American Factors, supra,* 265 N.Y. at 246, 192 N.E. 307 ("[a] new cause of action for fraud does not accrue each time a plaintiff discovers new elements of fraud in a transaction or new evidence to prove such fraud ... Failure to discover all the details [does] not prevent the statute from running") (citations omitted).

Knowledge of MHT's "secret" mortgage charged Riis with a duty to investigate the extent of MHT's involvement and knowledge in the mortgaging scheme. Furthermore, Riis' assertion that she could not assert a fraud claim without evidence of MHT's "fraudulent intent" is not grounded in New York law, as the claimant is not required to plead evidence of the subjective motivation of the party allegedly committing the fraud. *See Rooney Pace, Inc. v. Reid,* 605 F.Supp. 158, 162 (S.D.N.Y.1985) (while some factual basis is required under Rule 9(b), the subjective elements of defendant's knowledge and intent do not have to be pled with "great specificity"); *Dannenberg v. Dorison,* 603 F.Supp. 1238, 1241 (S.D.N.Y.1985) (plaintiff need only plead facts from which the court may reasonably infer fraudulent intent). Riis could have asserted this fraud claim as early as 1980 when she learned of MHT's involvement and motive to secure its loan.

There is also evidence that Riis was fully aware in 1982 that MHT both knew of her equitable claim to the ship and of O–U's precarious financial position and participated in all of the mortgage negotiations when it obtained the mortgage as additional security for its outstanding loans to O–U. The deposition testimony taken by Riis' attorney and the documents which Riis submitted in her 1981 Norwegian action against DnC explicitly detail MHT's involvement in the mortgage negotiations, and MHT's desire to protect itself against any equitable interest which Riis might obtain as a result of the arbitration. For example, Riis' December 6, 1982 pleading asserted that Lund and Haneborg (legal advisor to DnC and MHT) held a mortgage on the ship and issued a receipt on April 26, 1975 for the mortgage which provided in part:

> "A/S Falkefjell has further expressed that the issuance is subject to redelivery of the Mortgage, in case the arbitration concludes that the agreement of April 5, 1974 regarding M/S Sognefjell, inter alia, between A/S Falkefjell and Kristoffer Olsen on the one side, and Amelia and

Einar Riis on the other side, is considered null and void.

The receipt thus acknowledges the purpose of obtaining the mortgage, *i.e.*, to prevent an arbitration award favorable to Riis from draining equity from O–U. A similar recital of this "fraudulent" purpose was seen in the April 10, 1980 letter from Melander to the Board of Directors of DnC and was attached to Riis' December 6, 1982 pleadings.

Riis contends that the fact that these letters and receipts did not refer to MHT's involvement in the pre-mortgage negotiations left her unaware of MHT's role in the alleged fraud and unaware of how much MHT knew regarding O–U's financial situation. However, the depositions taken by her own counsel, in some instances in her presence, and submitted to the Norwegian court in December, 1982 reveal that DnC and MHT officers and agents testified that MHT was involved from the beginning and had as much knowledge as DnC and O–U of Riis' pending arbitration claim to the ship. For example, the Haneborg deposition in 1982 demonstrated that MHT was concerned about O–U's financial health and secured the mortgage in response to this deterioration:

> *Engelschion:* If I may stop you for a moment and ask you this: Did the *banks* consider the Reksten situation, call it the breach of the charter party, as serious?
> *Haneborg:* It is, of course, a serious weakness of the security position when the charter party payments stop at a time when the shipping market is falling and difficult, so the banks did regard it as a serious matter.

(Candido Statement, Exhibit F, pp. 10–11). DnC's defense brief, dated January 4, 1983, spelled out the banks concern for its loans to O–U. "[T]he bank was worried in view of the failing security in the form of failing hire income and the reduced value of the ship, and the shipping company's financial situation in general. Mantrust[3] DnC em-

barked on discussions with the company as to what measures had to be taken" (Candido Statement, Exhibit G, pp. 2–3).

Deposition testimony which Riis submitted in the Norwegian action also casts doubt on Riis' claims that she did not know of MHT's participation in securing the mortgage until DnC produced the Naper Memorandum in September, 1983. First, both the mortgage receipt and Haneborg's letter of April 26, 1975 to MHT and DnC portray MHT as the moving force behind the obtaining of additional security for the loan. DnC's January 4, 1983 defense brief consistently referred to the "banks" efforts in preventing a draining of O–U's resources, and reiterated the participation of Haneborg and his role as independent legal advisor for MHT and DnC. (Candido Statement Exhibit G).

Finally, the deposition testimony of DnC's bank officers made the state of MHT's knowledge (or "fraudulent intent") perfectly clear. Melander, in his October, 1982 response to Engelschion's questions about the Easter Agreement, responded:

> [I] was led to believe that there was a possibility that the owners of the shipping company might take measures, which might weaken the stock company's debt situation—or its solidity in relationship to their creditors, and therefore we had to be careful. *And the purpose here was not exactly that DnC in our own behalf or that of Mantrust and the other banks who gradually had become involved in this loan, should have a priority,* but that this was to be prevented to the advantage of the company, as security for all the creditors who might possibly have a claim.

(Dobbins Aff.—Exhibit C pp. 14–15).

Similarly, if as Riis contends, the release of the Naper Memorandum in December, 1983 was the "smoking gun," it had been fired over one-year previously in Riis' own deposition of Erling Naper in October, 1982:

---

**3.** The word "Mantrust" in the deposition portions excerpted above is the cable designation for Manufacturers Hanover Trust Company.

*Engelschion:* Were you personally in direct contact with anybody in the shipping company regarding this matter? [the Easter Agreement arbitration]

*Naper:* It is difficult to remember exactly who had contact with whom. *We discussed it, I discussed it with, amongst others, the Mantrust representatives in Oslo, who also participated in all previous discussions on the matter.*

(Candido Reply Statement, Exhibit C, pp. 16–18, emphasis added).

At the same time, Naper confirmed MHT's role in making the decision to secure the mortgage:

*Naper:* [I] would again like to emphasize that we were agents for a loan of which the most significant part was a Mantrust loan. During all the negotiations, representatives of Mantrust were present and the bank management was, of course, kept informed and up to date.

(Candido Reply Statement, Exhibit C, pp. 18–20).

■ Viewed against this factual backdrop, Riis' claim of "fraudulent concealment"—a claim that MHT should be equitably estopped from asserting the statute of limitations because of its subsequent efforts to conceal its alleged fraud—cannot toll the statute of limitations. While a defendant who makes fraudulent statements in an attempt to conceal facts essential to the plaintiff's cause of action should be equitably estopped from invoking the statute of limitations in his favor,[4] *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (N.Y.1978); *General Stencils, Inc. v. Chiappa,* 18 N.Y.2d 125, 272 N.Y.S.2d 337, 340, 219 N.E.2d 169, 171 (N.Y.1966), MHT's denials of what Riis already had submitted as evidence in the Norwegian action did not prevent her from asserting a timely fraud claim against MHT. At best, Riis' fraudulent concealment claim is redundant, as it charges that

MHT effectively concealed from Riis what she already knew or should have known about the mortgage. *See Renz v. Beeman, supra,* 589 F.2d at 751, *citing Augustien v. Levey,* 3 A.D.2d 595, 162 N.Y.S.2d 269, 273 (1st Dep't 1957), *aff'd,* 4 N.Y.2d 791, 173 N.Y.S.2d 27, 149 N.E.2d 528 (N.Y.1958) (when plaintiffs possess timely knowledge sufficient to place them under a duty to make inquiry and ascertain all the relevant facts, courts should not view with favor a claim of equitable estoppel grounded in fraud).

■ Riis also asserts that her claim of "fraudulent concealment" states a substantive cause of action in addition to tolling the statute of limitations on the underlying fraud claim. Riis bases this claim on MHT's alleged refusal to discuss "the particulars surrounding the manner in which MHT had obtained the mortgage on the M/S Sognefjell in April, 1975" during Einar Riis' visit to the MHT offices in September, 1983. (Amended Complaint ¶ 16). This "fraudulent concealment" fails to state a claim under New York law, however, as Riis has not alleged a relationship between MHT and Riis which would support a duty to disclose, and has not alleged Riis' reliance on any non-disclosure of a material fact. *See Leasing Service Corporation v. Broetje,* 545 F.Supp. 362, 366 (S.D.N.Y. 1982); *Fidenas AG v. Honeywell, Inc.,* 501 F.Supp. 1029, 1039 (S.D.N.Y.1980). To the extent that Riis relies on MHT's alleged denials of its involvement ("secrecy") in securing the ship mortgage as the affirmative misrepresentation required for fraudulent concealment, it is barred by the previous statute of limitations analysis. To the extent that it rests on MHT's failure to discuss the details of the mortgage negotiations with Einar Riis in September, 1983, it fails to specify the source of MHT's duty to disclose, and the material facts being withheld or any reliance by Riis on those 1983 "misrepresentations." Under New York

---

**4.** MHT correctly observes that this equitable estoppel doctrine has been incorporated into the two-year "reasonable diligence" discovery period under N.Y.C.P.L.R. § 203(f) and does not operate to extend the time in which a plaintiff

may file a fraud action beyond that point. *Government of India v. Cargill, Inc.,* 445 F.Supp. 714, 720 (S.D.N.Y.1978); *see also Marathon Enterprises, Inc. v. Feinberg,* 595 F.Supp. 368, 372 n. 19 (S.D.N.Y.1984).

law, the silence of a defendant, unaccompanied by some act or conduct to deceive the plaintiff, is not actionable fraud in absence of a confidential or fiduciary relationship. *Moser v. Spizzirro,* 31 A.D.2d 537, 295 N.Y.S.2d 188 (2d Dept.1968), *aff'd,* 25 N.Y.2d 941, 305 N.Y.S. at 153, 252 N.E.2d 632 (N.Y.1969); *Simcuski v. Saeli, supra,* 406 N.Y.S.2d 265, 377 N.E.2d 718, (nondisclosure of malpractice standing alone may provide a foundation for equitable estoppel but will not serve as the basis for a distinct cause of action in fraud). Fraudulent concealment requires knowledge, a relationship between the parties that creates a duty to disclose, and an intent to deceive and defraud by that nondisclosure. *Fidenas AG v. Honeywell, Inc., supra,* 501 F.Supp. at 1039.

As Riis' claims of fraud and fraudulent concealment are barred by the statute of limitations, it is not necessary to reach MHT's assertions that they fail to state a claim under Rule 12(b), Fed.R.Civ.P., and that the amended complaint fails to plead fraud with the particularity required under Rule 9(b), Fed.R.Civ.P. Riis is also not entitled to conduct further discovery on the fraudulent "coverup" of September, 1983 whose facts cannot state a claim under New York law.

**Sanctions**

According to MHT, the fact that Riis' claims are barred by the statute of limitations should have been obvious to Riis' counsel had they undertaken the "reasonable inquiry" mandated by Rule 11, Fed.R. Civ.P., and MHT claims that it is therefore entitled to sanctions in the form of attorney's fees and costs. *See Eastway Const. Corp. v. City of New York.* 762 F.2d 243, 253–54 (2d Cir.1985) (where it is patently clear that a claim has absolutely no chance of success under existing precedents and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, rule 11 has been violated).

Here there is no basis to conclude that Riis' pleadings were undertaken in bad faith, that her attorneys failed to make a reasonable inquiry into the underlying elements of this factually complex action, or that the pleadings were drafted in a manner so irresponsible as to rebut the presumption of validity to which counsel's pleadings are entitled. As the Second Circuit has recently stated, "Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." *Eastway Const. Corp. v. City of New York, supra,* 762 F.2d at 254.

For the aforementioned reasons, Riis' claims are barred by the statute of limitations, and MHT's motion for summary judgment dismissing the amended complaint is granted. MHT's motion for sanctions pursuant to Rule 11 is denied.

**IT IS SO ORDERED.**