Jimmie **RODGERS**, Plaintiff,

v.

**ROULETTE RECORDS, INC.** and Morris Levy, Defendants.

No. 84 CIV. 8626 (SWK).

United States District Court, S.D. New York.

Jan. 11, 1988.

Dwyer, Peltz & Walker, New York City by Alexander Peltz, for plaintiff.

Borstein & Sheinbaum, New York City by Leon Borstein, for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff Jimmie Rodgers has sued defendants under various theories for failure to pay royalties and provide accountings for plaintiff's musical recordings which defendants, Roulette Records and its president Morris Levy, then sold, licensed and distributed. Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332. Plaintiff sues for (1) breach of contract, (2) conversion, (3) fraudulent inducement and fraud, (4) accounting, (5) constructive trust, (6) breach of fiduciary duty, (7) rescission and (8) quantum meruit.

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56, claiming that the applicable statutes of limitation bar each of the claims. Defendant Roulette Records also moves for summary judgment, claiming that they are entitled to judgment as a matter of law on claims two through eight. Defendant Levy also moves for summary judgment, claiming to be entitled to judgment as a matter of law on the claims interposed against him personally, claims two, three, five and six. For the reasons stated below, the Court grants the motions for counts one, two, three, four, five, six and seven and denies in part the motion for count eight.

## FACTUAL BACKGROUND

Plaintiff entered into a Memorandum of Understanding (hereinafter "Contract") with defendant Roulette Records on April 23, 1957. *See* Affidavit of Morris Levy in Support of Roulette Record's Motion (hereinafter "Levy Affidavit I"), Exh. C. Plaintiff alleges that he entered into this Contract without the advice of counsel after meeting with defendant Morris Levy. Complaint at ¶¶ 9, 10. The Contract provided that "Jimmy" Rodgers would record at least eight record sides for defendant, the compositions to be chosen by defendant. Plaintiff was restricted from making recordings for anyone else during the term of the agreement and for five years thereafter. Defendant was to pay plaintiff royalties in the amount of three percent (3%) of ninety percent (90%) of the "retail list price of double-faced records sold in the U.S. and paid for". Levy Affidavit I at Exh. C. Royalties would be reduced by one-half for records sold outside the continental United States, computed in the currency of the country where the list price applies and payable when the defendant received payment in the United States. Defendant would charge against plaintiff's royalty account the entire cost of the recording sessions and any advances made by defendant to plaintiff. Statements were to be issued twice a year, on September 1st and March 1st. The Contract provided that

all recordings belonged solely to defendant company and gave defendant the

> right to assign, lend, lease or sell to any person, firm or company, matrice, stamper or master recordings from which records reproducing all or any of these artist's services hereunder may be manufactured or sold and shall have the right to grant permission to any such person, firm or company, to use such matrices, stampers or master recordings to manufacture and sell records therefrom. *Id.*

Plaintiff claims that either the Contract or industry custom requires defendants to pay royalties for sales made by licensees, Complaint at ¶ 13, whereas defendant Levy asserts that Roulette had no contractual obligation to charge license fees. Levy Affidavit I at ¶ 22. Roulette Record's comptroller, Howard Fisher, acknowledges, however, that royalties were to be computed by applying the royalty rate to record sales or to license fees. Affidavit of Howard Fisher in Support of Roulette Record's Motion, at ¶ 11.

Plaintiff alleges that he has made approximately 100 recordings for plaintiff, but has received insufficient or no royalties since the early sixties because defendants underreported domestic sales, failed to report foreign sales, failed to report sales by licensees, and ascribed too low a royalty rate to many of the songs. Complaint at ¶ 16.[1] Plaintiff also alleges that defendants failed to provide accounting statements as required under the Contract. In the complaint, plaintiff claims not to have received any accounting statements until 1981, yet it is apparent that plaintiff's agents received at least some accounting reports since the time the Contract was signed. Affidavit of Jimmie Rodgers at ¶ 16; Levy Affidavit I at ¶ 38. Plaintiff claims that these accounting statements misrepresented the royalties and sales of plaintiff's songs.

Between 1957 and 1960, defendant Roulette Records advanced money to plaintiff and charged his account with costs for recording, totalling approximately $26,000. Over the next twenty-five years, defendants credited plaintiff's account with royalties in an amount approximating $20,000, leaving plaintiff with a negative, or unrecouped, balance of $6000. Peltz Affidavit at ¶¶ 5, 6. After commencement of the lawsuit, defendant Roulette Records acknowledged that it owed plaintiff an additional $14,000 for royalties due for the early 1980's. Plaintiff alleges that this amount is but a small fraction of the actual amount due from 1960 through the present.

## STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). The movant may discharge the burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). The non-movant must "do more that simply show that there is some metaphysical doubt as to the material facts." *Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Speculation,

---

**1.** Though the record is not absolutely clear on this point, the crux of the controversy appears to concern whether plaintiff is entitled to a share of the advances which defendants received from licensees over the past thirty years.

conclusory allegations and mere denials are not enough to raise genuine issues of fact.

## DISCUSSION

### 1. *Breach of Contract*

■ Defendants move for summary judgment on this claim on the grounds that New York's six-year statute of limitations, Civil Practice Rules and Laws ("CPLR") 213, bars recovery for any breach earlier than November 30, 1978, six years before the complaint was filed. Plaintiff does not contest the application of this provision, but asserts that the statute of limitations has not begun to run since the account between plaintiff and defendant is an open, mutual account. Plaintiff apparently seeks to invoke CPLR 206(d), the successor to Civil Practice Act § 56, which states

> In an action based upon a mutual, open and current account, where there have been reciprocal demands between the parties, the time within which the action must be commenced shall be computed from the time of the last transaction in the account on either side.

The existence of an open, mutual account depends upon the intent of the parties at the time they entered into their agreement. *In re Meyrowitz' Estate*, 114 N.Y.S.2d 541, 548 (Surrog.Ct.1952), *aff'd* 284 A.D. 801, 132 N.Y.S.2d 327 (1st Dept.1954). This Court must determine, therefore, whether the parties intended to create a mutual, open and current account. An open, mutual account exists when "the parties regard the items as constituting one account and as capable of being set off one against the other so that it is only the balance that constitutes the claim." *Id.* (citing *Green v. Disbrow*, 79 N.Y. 1, 9 (1879)). As this Court recently stated, "[mutual running] accounts exist only where there is an express or implied agreement between two parties to set off their mutual debts against each other." *Levinson Steel Co. v. Schiavone Constr. Co., Inc.*, 637 F.Supp. 164, 167 (S.D.N.Y.1986); *see also Seaboard Coast Line Railroad Co. v. Long Island Rail Road Co.*, 595 F.2d 96, 100 (2d Cir. 1979).

In this case, the parties appear to have created an open, mutual account. Plaintiff and defendants established a single account through which advances made to plaintiff and costs associated with plaintiff's recording sessions would be debited to the account and royalties due plaintiff would be credited to the account. A single, running balance would determine the amount owed by one party to the other. Plaintiff's debts to Roulette Records, in the form of advances and costs, would be offset by Roulette Records' debts to plaintiff, in the form of royalties owed. This arrangement is evident from the face of the contract and from the dealings between the parties.

The Contract, however, also called for statements to be issued every six months. According to Fisher, "accounting statements were prepared semiannually, a requirement of the Contract, and sent out with a check for the amounts, if any, shown by the accounting to be due." Fisher Affidavit at ¶ 12; *cf.* Complaint at ¶¶ 18, 19. The plaintiff expected to receive a royalty statement each six months which summarized all the royalties due him under the Contract and for defendants to pay him any positive balance stated. Plaintiff did not expect for the account to run indefinitely such that he would receive money only at some future time, but instead expected for a balance to be stated every six months as the Contract required. Stating a balance due ends the running of an open, mutual account and begins the running of the applicable statute of limitations. *See Minion v. Warner*, 238 N.Y. 413, 419, 144 N.E. 665 (1924) ("it is upon the theory that the understanding of the parties was that there should be at the end of each year no annual settlement and that no balance became due at such time."); *Green v. Disbrow, supra*, 79 N.Y. at 13 ("the account is permitted to run with the view of *ultimate* adjustment by a settlement and payment of the balance.") (emphasis added); 6 Williston on Contracts § 2030, at 5696–97 (1938) ("there shall be mutual open, current dealings and claims subject to a *future final balance*.") (emphasis added), *cited in Baggett Transportation Co. v. U.S.*, 319 F.2d

864, 870, 162 Ct.Cl. 570 (1963); 1 Am. Jur.2d, Accounts & Accounting § 7. Since defendants were to state and pay the balance at the end of each six-month period, the account was intended to be open only for each six-month period.

Additionally, it appears that defendants have not debited plaintiff's account since the early sixties. Since that time, the only activity on the account has been credits to plaintiff. An account which has only credits and no offsetting debits is in effect not a mutual account. *Green v. Disbrow, supra,* 79 N.Y. at 9. The lack of offsetting debits and credits in the statutory period negates the existence of a mutual account. A finite series of debits followed by an indefinite series of credits does not constitute a mutual, open and current account.

Plaintiff's argument that such an account exists between the parties would have the effect of tolling the statute of limitations into the indefinite future since no "last" transaction would ever take place between the parties. Such a result would work an unfair hardship on defendants since they would be potentially liable for wrongs committed in the distant past and, thus, the very purposes of the statute of limitations would be undermined. *Duffy v. Horton Memorial Hosp.,* 66 N.Y.2d 473, 497 N.Y.S.2d 890, 892, 488 N.E.2d 820 (1985) ("the primary purpose of a limitations period is fairness to a defendant."). Application of CPLR 206(d) to a situation in which royalty payments are due for an indefinite future—without any other ongoing transactions between the parties creating off-setting debts—would eliminate a defendant's "reasonable expectation that the slate has been wiped clean of ancient obligations" and would undermine the principle that a defendant "ought not to be called on to resist a claim where the 'evidence has been lost, memories have faded, and witnesses have disappeared'." *Id.* (citation omitted). For these reasons, defendants motion is granted and the six-year statute of limitations applies to each of the royalty statements; plaintiffs are precluded by the statute from suing on statements issued or due to be issued prior to November 30, 1978.

### 2. *Conversion*

■ Plaintiff claims that defendants converted for their own use the royalties which rightfully belonged to him. Defendants move for summary judgment on the second cause of action on the grounds that it is barred by the applicable statute of limitations, CPLR 214, and on the grounds that there are no genuine issues of fact and that they are entitled to judgment as a matter of law.

An action for conversion must be brought within three years from the time the action accrues. *Sporn v. MCA Records, Inc.,* 58 N.Y.2d 482, 462 N.Y.S.2d 413, 416, 448 N.E.2d 1324, 1327 (1983). Since a conversion had been alleged, the three-year statute of limitations would apply and would run from the time the conversion occurred. *Id.* In the case before this Court, therefore, the cause of action for the alleged conversion would accrue each time the alleged conversions took place. Consequently, plaintiffs are time-barred from asserting claims against defendants for conversions which allegedly took place earlier than November 30, 1981.

■ Defendants are also entitled to judgment as a matter of law since plaintiff has not and cannot establish that he ever had ownership rights in the royalties due him. A claim for conversion does not lie unless plaintiff can establish that he "had legal ownership or an immediate superior right of possession to specific identifiable property ..." *Aetna Casualty & Surety Co. v. Glass,* 75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept.1980). Defendants never held property belonging to plaintiff since they only held the proceeds of sales of their own property, the recordings, a part of which they were contractually obligated to pass onto plaintiff in the form of royalties. *National Committee on the Observance of Mother's Day, Inc. v. Kirby, Block & Co.,* 17 A.D.2d 390, 234 N.Y.S.2d 432, 434 (1st Dept.1962) ("What defendants received was the proceeds from the sales of their own goods, a part of which proceeds, when ascertained, they would owe to plaintiff.")

Similarly, commissions due to a sales agent are not subject to conversion since the plaintiff has never had "ownership, possession or control of the money" ... *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dept.1982).

Plaintiff cannot assert a conversion claim for acts which merely constitute a breach of contractual rights: "to sustain a conversion claim, a plaintiff must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1288 (S.D.N.Y.1984). When royalties are due pursuant to a contractual relationship, whether express or implied, plaintiff cannot recover on a theory of conversion without establishing more. For these reasons, defendants' motion for summary judgment are granted.

### 3. *Fraud*

■ Defendants move for summary judgment on plaintiff's third cause of action on statute of limitation and substantive grounds. Plaintiff alleges two distinct fraudulent acts, the first being fraudulent inducement to enter the contract and the second being fraudulent dispossession of plaintiff's royalties.

In New York, a fraud claim must be brought within six-years of the date the fraud occurred or within two years from the time plaintiff discovered or reasonably should have discovered the fraud. *Riis v. Manufacturers Hanover Trust Co.*, 632 F.Supp. 1098, 1102 (S.D.N.Y.1986). The statute begins to run when the plaintiff has "knowledge of facts sufficient 'to suggest to a person of ordinary intelligence the probability that he has been defrauded'." *Id.* (citations omitted) The alleged fraudulent inducement to enter the contract occurred in 1957. Since plaintiff claims that the misrepresentation upon which the fraud claim is based was each of the allegedly false royalty statements, the alleged fraudulent dispossession of royalties occurred with the issuance of each allegedly false royalty statement. The critical question is thus when plaintiff discovered or reasonably should have discovered the fraud.

Plaintiff claims not to have discovered the fraud until shortly before he filed his lawsuit in 1984. *See* Rodgers Affidavit at ¶¶ 5, 6, 7. Plaintiff asserts that the royalty statements appeared accurate mathematically, Peltz Affidavit at ¶ 7, and that nothing in the royalty statements indicated that defendants were defrauding plaintiff. Rodgers Affidavit at ¶ 3. Plaintiff asserts that the statements appeared accurate since "I did not have any expectation that monies would be forthcoming as I was not aware of any exploitation by Roulette or its licensees, if any, of my songs recorded for Roulette." *Id.* at ¶ 4. At the same time, however, plaintiff alleges in his complaint that his "songs sold millions of copies at around the time of their release and have continued to sell through and including the present time." Complaint at ¶ 15. Moreover, plaintiff recorded over 100 songs for defendants, representing a "healthy portion of their better-selling records." Rodgers Affidavit at ¶ 13. Since plaintiff was under a contractual obligation not to record for other companies, any records released on the market had to be released by Roulette or their licensees/assignees. It is inconceivable that plaintiff or his agents did not notice that his songs were being released on records between 1960 and 1984.

Indeed, plaintiff's agents had to know that Roulette was releasing records of plaintiff's songs since plaintiff received credit for approximately $20,000 in royalties between 1962 and 1979 and plaintiff's agents received at least some of these statements. Plaintiff's agents should have known that royalties were understated given plaintiff's apparent popularity. At the very least plaintiff or his agents should have investigated the status of his royalties given the apparent discrepancy between the sale of millions of his songs and the veritable trickle of royalties flowing back to plaintiff. Such an investigation would necessarily have to have gone beyond mere reliance on defendants' royalty statements. Reliance on statements suspected of being false cannot be the due diligence required of plaintiff.

When Bill Ficks, an agent for plaintiff, inquired about his account in 1981, the account showed that plaintiff still owed defendants approximately $6,000, indicating that plaintiff had received only $20,000 in royalties in nearly twenty years. The fraud should have been apparent to plaintiff at that time given his popularity and the success of his records. For these reasons, plaintiff's fraud claims are time-barred.

■ Additionally, plaintiff is not entitled to recover under his fraud claims as a matter of law. In order to establish a claim for fraudulent inducement of contract, plaintiff must allege *inter alia* a false representation upon which plaintiff detrimentally relied. *Robbins v. Ogden Corp.*, 490 F.Supp. 801, 809 (S.D.N.Y.1980). Plaintiff alleges that, at the time of contracting, defendant promised to pay royalties and provide accountings while secretly never intending to do so. While this allegation would state a claim for fraud under New York law, *see Bower v. Weisman*, 650 F.Supp. 1415, 1422 (S.D.N.Y.1986); *Forbo-Giubiasco S.A. v. Congoleum Corp.*, 482 F.Supp. 716, 719 (S.D.N.Y.1980) (citing *Sabo v. Delman*, 3 N.Y.2d 155, 162, 164 N.Y.S.2d 714, 718, 143 N.E.2d 906, 909 (1957)) [2], plaintiff has not produced evidence, beyond defendants failure to perform, to suggest that defendants never intended to perform their contractual obligations. *Soper v. Simmons Int'l, Ltd.*, 632 F.Supp. 244, 249 (S.D.N.Y.1986) (proof of undisclosed intention not to perform contract must be based on sufficient evidence in addition to mere nonperformance) (cases cited therein). As such, defendants are entitled to summary judgment on the fraudulent inducement claim.

Finally, plaintiff's fraud claim fails for the simple reason that the fraud they allege is nothing more than the breach of contract. *Brignoli v. Balch Hardy and*

*Scheinman, Inc.*, 645 F.Supp. 1201, 1207 (S.D.N.Y.1986). In *Brignoli*, the Court dismissed plaintiff's fraud claim that "each of the defendants represented to him [plaintiff] that the payments made [pursuant to a contract] to Brignoli by the brokers conformed to the agreed-upon percentages of gross revenues" because they merely restated the contract claim. *Id.* A claim that defendant "intentionally and falsely represented that it was abiding by the alleged contract" was insufficient to sustain a fraud claim. *Id.* Similarly, in *Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 263, 11 N.E.2d 902 (1937), the court noted that "if the defendant owes the plaintiffs any money it is because of the agreement which it made to pay royalties upon sales which were made. Even though the defendant may have falsely stated the amount of the sales and rendered false statements, the fact remains that its liability on the actual amount of sales depends upon the contract." *Id.* The same is true in this case since the alleged fraudulent misrepresentations were the allegedly false royalty statements. Any wrongdoing by defendants stems from a breach of their contractual obligations. For these reasons, defendants' motions are granted.

### 4. *Accounting*

■ Defendants move for summary judgment on plaintiff's action for an accounting. In order to establish a right to an accounting, which is an action in equity, plaintiff must demonstrate the existence of a fiduciary relationship between himself and defendant, or the existence of a joint venture or other special circumstances warranting equitable relief. *Grossman v. Laurence Handprints-N.J., Inc.*, 90 A.D. 2d 95, 455 N.Y.S.2d 852, 858 (2d Dept.1982); *see Sanshoe Trading Corp. v. Mitsubishi Int'l Corp.*, 122 Misc.2d 585, 470 N.Y.S.2d 991, 993 (Supr.Ct.1984), *aff'd* 104 A.D.2d

---

**2.** The Court notes the existence of contrary authority in New York courts. *See e.g., CB Western Financial v. Computer Consoles,* 122 A.D.2d 10, 504 N.Y.S.2d 179, 182 (2d Dept.1986) (a "cause of action for fraud in inducing a contract cannot be based solely upon a failure to perform contractual promises of future acts."). *See*

*Deerfield Communications Corp. v. Cheseb-rough–Ponds, Inc.,* 68 N.Y.2d 954, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004 (1986) (plaintiff did not produce evidence which suggested that defendant misrepresented an existing fact which induced the contract).

337, 479 N.Y.S.2d 149 (1st Dept.1984). Plaintiff claims that a fiduciary relationship exists because defendants collected money on behalf of plaintiff in the form of royalties or license fees. This claim fails for a few reasons.

No fiduciary relationship exists in this case between Rodgers and defendants; instead, the parties enjoy a contractual relationship. In *Sanshoe,* the court held that a fiduciary relationship did not exist between a sales agent and the company for whom the agent made sales, even though the company collected money which it had an obligation to pass onto plaintiff. 470 N.Y. S.2d at 993. As the *Sanshoe* court noted, "the mere fact that the proceeds from the sale of the footwear were collected and were to be distributed by the defendants and that the plaintiff is unaware of the exact amount to which he is entitled does not make the defendants fiduciaries." *Id.; see also Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Company,* 33 A.D.2d 766, 306 N.Y.S.2d 599 (1st Dept.1969) (no fiduciary relationship where purely commercial relationship exists), *aff'd* 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142 (1972), *cert. denied* 409 U.S. 875, 93 S.Ct. 125, 34 L.Ed.2d 128 (1972).

Similarly in this case, the fact that Roulette or Levy collected royalties or fees which it had an obligation to pass on to plaintiff did not make them plaintiff's fiduciaries. In addition, never having received plaintiff's property, *see National Committee, supra,* defendants could not have been acting as their fiduciary. Since defendants were not fiduciaries to plaintiff, an accounting is not available.[3] For these reasons, defendant's motion is granted.

### 5. *Constructive Trust*

 Defendants move for summary judgment on plaintiff's action to impose a constructive trust based on defendants' receipt of plaintiff's royalties. A claim to establish a constructive trust must prove:

(1) a confidential or fiduciary relation; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *Bankers Security Life Insurance Society v. Shakerdge,* 49 N.Y.2d 939, 428 N.Y.S.2d 623, 624, 406 N.E.2d 440, 441 (1980). As concluded above, the parties did not have a fiduciary relationship and thus plaintiff cannot maintain an action to establish a constructive trust.[4] Defendants' motions for summary judgment are thus granted.

### 6. *Breach of Fiduciary Duty*

 Plaintiff claims that defendants breached a fiduciary duty by negotiating for unconscionably low royalty fees with defendants' licensees. Defendants are entitled to summary judgment for a number of reasons.

First, as stated above, there was no fiduciary relationship to be breached. Second, plaintiff could not identify any royalty or license fee that was unconscionably low. Third, plaintiff only alleged, but did not establish, that defendants had a duty to negotiate royalty or license fees with third parties. Defendants claim that no such obligation existed. The record nowhere indicates an obligation for defendants to negotiate on plaintiff's behalf. Indeed, the nature of the alleged duty was simply that defendants had a duty to ensure that plaintiff received the ultimate yield due from the licensing arrangements. Peltz Affidavit ¶ 9. At best, plaintiff had a contractual or implied contractual right to receive royalties for recordings which Roulette decided to license to third parties. Defendants' motions for summary judgment on this claim are thus granted.

### 7. *Rescission*

 Plaintiff seeks to rescind the contract on the grounds that defendants induced the contract by fraud. As explained above, plaintiff has not established, beyond the mere allegations, that defendants never

---

**3.** Plaintiff does not claim that the parties were partners, entered into a joint venture or that a principal-agent relationship existed, nor do these relationships appear to be present.

**4.** The Court also notes that plaintiff did not transfer anything in reliance on the promises made.

**740**

intended to adhere to the terms of the contract. Nor has defendant alleged any harm other than the loss of royalties. Thus, an adequate remedy at law exists and defendants are entitled to summary judgment on the rescission claim.

### 8. *Quantum Meruit*

Plaintiff also seeks to recover for unjust enrichment. In order to recover on a theory of unjust enrichment, plaintiff must prove that defendant was enriched, that such enrichment was at plaintiff's expense, and that circumstances were such that in equity and good conscience defendant should compensate plaintiff. *Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 20 (2d Cir.1983). Plaintiff asserts a claim for quantum meruit on the grounds that plaintiff performed services for defendants, that defendants promised to pay royalties, that defendants profited from the sale and distribution of plaintiff's recordings, that defendant has not adequately compensated plaintiff, and that defendants have accordingly been unjustly enriched. As explained below, plaintiff has established the existence of genuine issues of fact to suggest that defendants may have been unjustly enriched.

Defendants correctly note, however, that plaintiff cannot recover under a theory of unjust enrichment "where an express contract exists between the parties concerning the same subject matter ..." *Nixon Gear & Machine Co., Inc. v. Nixon Gear Inc.,* 86 A.D.2d 746, 447 N.Y.S.2d 779, 781 (4th Dept.1982). To the extent royalties were due under the Contract, plaintiff cannot recover for unjust enrichment. Nonetheless, since defendant denies a contractual obligation to pay royalties for recordings licensed to third parties, plaintiff may be able to recover such royalties on an unjust enrichment theory. Plaintiffs have argued that they are suing not only the Contract, but also for monies due to industry custom and practice. Plaintiffs cite Fisher's statement that

> Artist royalties for exploitation of recordings are calculated by Roulette in accordance with the particular artist's

contract with Roulette, license agreements made pursuant to such contract and industry custom and practice.

Peltz Affidavit at ¶ 19, *citing* Fisher Affidavit at ¶ 9. It is unclear whether Roulette was obligated to pay royalties to this particular plaintiff by licensing agreements or industry custom and practice. Plaintiff claims that defendants were obligated to pay royalties for recordings which defendants licensed to third parties, while defendants deny any contractual obligation to do so. Thus, there is at least a question of fact as to whether the defendants were obligated by something other than the Contract to pay royalties. Nonetheless, plaintiff may only recover for such unjust enrichment or implied-in-fact contractual duty which has accrued within the past six years since these causes of action are covered by the general six-year statute of limitations, CPLR 213. *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 722 (S.D.N.Y.1986).

### CONCLUSION

For the reasons stated above, the Court grants defendants' summary judgment motions for counts two, three, four, five, six and seven and denies in part the motion for count eight. Plaintiff may thus proceed to trial on the breach of contract and quantum meruit claims for claims arising on or after November 30, 1978.

SO ORDERED.